**Kenneth T. RANDOLPHI, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. C–81–0058–WWS.**

United States District Court, N. D. California.

Feb. 2, 1982.

Amanda Metcalf, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Michael G. Gerson, Boxer & Elkind, Oakland, Cal., for defendant.

## ORDER

SCHWARZER, District Judge.

Plaintiff petitions under 42 U.S.C. § 405(g) for review of a final decision by defendant Secretary of Health and Human Services denying plaintiff's claim for Social Security disability insurance benefits. The Court must determine whether substantial evidence in the administrative hearing record supports the determination of non-disability reached by the Administrative Law Judge (ALJ) below. *See, e.g., Chavies v. Finch,* 443 F.2d 356 (9th Cir. 1971).

## I. *Background of the Case*

Plaintiff, who is now fifty years of age, worked as a truck driver/truck loader and occasionally as a gas station attendant and tow truck operator from 1950 to 1978. He has a high school education. Because of industrial injuries to his back, plaintiff was earlier awarded worker's compensation and social security disability benefits for a disability period from May 1974 to July 1975, when he returned to work as a truck driver. His back problems recurred, however, and plaintiff has not worked since June 1978. At about that time, plaintiff underwent the second of two spinal fusions, in addition to other medical treatment. Upon application to the Social Security Administration, plaintiff received a disability award for a period beginning June 13, 1978.

Reports by his treating orthopedist, Dr. Sandell, in April 1979 indicated that plaintiff's back condition had plateaued, and in July 1979 Dr. Sandell found some tenderness in the muscles around the spine and along the post-operative scar. But the spinal fusion was solid, there was no measurable weakness in the lower extremities, nor was there pain on straight leg raising, nor appreciable sensory loss. Dr. Sandell concluded, however, that plaintiff could not resume truck driving, although he could do clerical work.

Plaintiff was also examined in July 1979 by Dr. Prussack, a neurologist. Dr. Prussack detected no severe distress, although there was diminished pin perception in the lower left leg. Plaintiff had "excellent" arm and leg strength and a normal stance. But he limped slightly, favoring the left leg, and a slight list leftward was observable. Dr. Prussack diagnosed chronic low back pain and possibly some scarring around the nerve roots, causing numbness and intermittent pain.

Apparently on the basis of these reports, the Social Security Administration concluded that plaintiff was no longer under a disability that precluded all gainful employment after July 1979. Pursuant to 42 U.S.C. § 423(a)(1), benefits were terminated two months later, in September 1979.

The ALJ's decision was largely based on the medical reports mentioned above, from Dr. Sandell and Dr. Prussack. Also before the ALJ were additional reports by Dr. Sandell dated November 1979 and May 1980, and plaintiff's own testimony concerning his condition. In November 1979 Dr. Sandell reported that plaintiff's condition was essentially unchanged since July. In May 1980 the doctor found that plaintiff was still tender around the surgical scar and that the range of spinal motion remained quite limited, but also that plaintiff was not suffering as much pain as previously. A lumbar myelogram failed to disclose any definite nerve root deficit in the lower spine. Left knee-jerk reflex was still subnormal, and pain occasionally flared up, requiring medication. Dr. Sandell diagnosed a mild disc problem at the level of the third and fourth lumbar vertebrae and concluded that plaintiff would continue to have significant back problems for the rest of his life. The doctor recommended decreased activity and continued use of anti-inflammatory medications. He concluded that plaintiff could not be gainfully employed.

Plaintiff testified that he could sit for an hour at a time, walk for half an hour, and stand for fifteen minutes. During the day he waters the lawn, dusts, watches television, travels to the grocery store (although he cannot lift grocery sacks), cleans the kitchen, and takes walks or drives to a nearby park. Plaintiff reported that he had consulted a vocational counselor, who had suggested training for a locksmith's job. Dr. Sandell disapproved the idea, however, when he learned that it required getting in and out of a van repeatedly, and plaintiff dropped the plan.

The ALJ found that plaintiff could not return to his former work, but that he retained the functional capacity to perform sedentary work. Applying the medical-vocational guidelines in the regulations (the "grid": Table 1, Appendix 2 of Subpart P of title 20 of the Code of Federal Regulations, §§ 404.1520 *et seq.*), which take into account the claimant's vocational factors (age, education, and work history) as well

as his residual functional capacity, the ALJ found that the regulations directed a finding of "not disabled." Accordingly, he upheld the administrative decision to declare the disability ended as of July 1979 and to terminate the payment of benefits September 30, 1979.

After the ALJ's decision was written, Dr. Sandell made an additional report in the form of a letter to counsel dated July 20, 1980. On the basis of this report, plaintiff asked for review by the Appeals Council. The report repeated plaintiff's complaints of being unable to sit for more than an hour at a time and of having his leg "go out" occasionally, causing plaintiff to stumble. Dr. Sandell stated that these complaints indicated to him that plaintiff could not sit for six hours a day, as he understood sedentary work would require.

The Appeals Council considered Dr. Sandell's report but concluded that it added nothing new and that the ALJ had a sound basis for deciding that plaintiff could perform sedentary work and so was not disabled within the meaning of the statute. Thus, it affirmed the ALJ's decision on November 5, 1980. Plaintiff filed his petition for review of this final decision of the Secretary in early January 1981 in the district court.

The parties stipulated to several extensions of time in the normal briefing schedule provided in the Court's general procedural order for social security appeals, and on September 18, 1981 plaintiff filed a "Supplemental Statement of Facts and Argument." This supplemental brief recites that plaintiff filed a new application for disability benefits while this action for review was pending. The Social Security Administration referred plaintiff to Dr. Troy, an orthopedic surgeon, for an independent evaluation. Dr. Troy reported in March 1981 that plaintiff had no definable surgical problem that would explain his reported leg trouble, but that his limited range of spinal movement and "moderate distress" were evident in the course of the examination. He found "little in the way of true neurologic deficit" and recommended participation in a pain-reduction clinic. He expressed the hope that this would make it possible for plaintiff to take up some form of "light" or "semi-sedentary" work, which were precluded at present by "plaintiff's present condition and complaints."

The Social Security Administration granted plaintiff's new application for benefits, establishing a period of disability of indefinite duration commencing April 1981. Plaintiff contends that the application was granted on the strength of Dr. Troy's report. However, as the United States Attorney discovered, the Social Security Administration has lost the file on plaintiff's new application for benefits, and so it cannot be ascertained on what basis benefits were granted in 1981.

As a result of the ongoing benefits plaintiff began receiving last year, the period now in issue on review of the earlier ALJ decision is only from July 1979 (with benefits actually terminated September 30, 1979) to April 1981.

II. *Discussion*

Plaintiff disputes the ALJ's conclusion in 1980 that he was not disabled as of July 1979. Disability is defined in 42 U.S.C. § 423(d)(1)(A) as a "medically determinable physical or mental impairment" that prevents substantial gainful activity and is expected to continue for at least twelve months or to result in death. The impairment must be severe and prevent both returning to former employment and undertaking any other substantial gainful employment. 20 C.F.R. § 404.1505.

The regulations list the steps that must be taken in determining whether a claimant is disabled. A claimant is found "not disabled" if he or she (1) is currently engaged in substantial gainful employment; or (2) does not have a "severe impairment" significantly limiting the ability to perform "basic work activities." If the claimant does have a severe impairment and it is identical or equivalent to an impairment listed in Appendix 1 of Subpart P of title 20 of the regulations, then (3) the claimant is found disabled without further steps being re-

quired. If not, however, the claimant may be found not disabled despite the severe impairment if (4) he or she is capable of performing relevant past work or (5) any other substantial work in the national economy. *See* 20 C.F.R. § 404.1520. In order to resolve the last two steps, the ALJ must determine the claimant's residual functional capacity—what the claimant can still do despite his or her physical limitations. *See* 20 C.F.R. §§ 404.1520(e), (f); 404.1545. The residual functional capacity is then correlated to the claimant's "vocational factors"—age, education, and work experience—and compared with the demands of the former work and other substantial work. *See* 20 C.F.R. § 404.1560. The comparison relies on definitions of jobs in the Dictionary of Occupational Titles produced by the Department of Labor. 20 C.F.R. § 404.1569. Appendix 2 to Subpart P contains rules that use this data to determine whether jobs exist in the national economy for persons with the claimant's combination of residual functional capacity and vocational factors. *Id.* Table 1 of Appendix 2, the medical-vocational "grid," summarizes these facts and directs findings of "disabled" or "not disabled." Rule 200.00 of Appendix 2 explains that the grid should not be mechanistically applied: the findings of fact as to claimant's residual functional capacity and vocational factors may be rebutted, and the grid, which is based on strength limitations, is not "fully applicable" where the claimant suffers from non-exertional impairments. Rule 200.00(e). Indeed, the grid is irrelevant if the claimant's unusual circumstances (*e.g.*, illiteracy and mental retardation or the loss of one hand) "significantly compromise" the range of jobs available in the exertional category for which claimant would otherwise be found qualified. *See* Rule 201.00(h). The exertional categories are defined according to mobility requirements and the need to lift objects within specified weight limits. *See* Rules 201.00–204.00 of Appendix 2.

The "grid" represents generalizations based on data concerning the existence of jobs in the national economy available to persons with certain combinations of func-

tional and vocational limitations. As such, it has been upheld as a rational exercise in "legislative line-drawing." *E.g., Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir., 1981). The regulations allow room to consider extraordinary circumstances and to rebut each of the factual findings that contribute to the directed finding of disability or non-disability. *Id.*

In the present case, the ALJ applied each of the steps in sequence. He found that plaintiff was not currently engaged in substantial employment and that he did have a severe physical impairment significantly limiting his ability to perform work-related tasks. This impairment is musculoskeletal, aggravated by pain. It consists of the residuals of back injury corrected by spinal fusion. The list of impairments in Appendix 1 of Subpart P indicates that spinal fusions are to be considered disabilities for twelve months following surgery. After that period, they must be evaluated to determine how limiting the residual impairment is to the claimant. Thus, the ALJ could not conclude after the third step that plaintiff was indefinitely disabled after July 1979, twelve months after the operation. *See* Rule 101.05(B)(2) of Appendix 1.

The physicians agreed with plaintiff that he could not do any heavy lifting or frequent bending, so the ALJ concluded at the fourth step that plaintiff could not return to his former work as a driver and loader of trucks. At the fifth and final step, however, the ALJ faced the question whether plaintiff could perform sedentary jobs for which he had no previous training. He concluded that plaintiff's residual functional capacity, as revealed by the medical reports and plaintiff's own testimony, was sufficient for sedentary labor. Finding plaintiff's age to be 48, his education to be that of a high school graduate, and his prior work experience to constitute skilled or semi-skilled work involving skills not transferrable to most sedentary jobs, he found the proper box on the medical-vocational grid; it directed a finding that plaintiff was not disabled.

Plaintiff, on appeal, does not challenge the use of the grid itself, or any of the vocational findings made by the ALJ. Instead, he contends that the evidence contradicts the ALJ's finding that plaintiff retained sedentary functional capacity. That finding must be upheld, however, even if the evidence was contradictory, so long as it is supported by substantial relevant evidence in the record. *E.g., Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Walker v. Matthews,* 546 F.2d 814, 818 (9th Cir. 1976).

Plaintiff's objection to the classification of sedentary functional capacity is grounded on the evidence that he could not sit uninterruptedly for over an hour, a symptom which he reported to each of the examining physicians. Plaintiff might have cited *Cornett v. Califano,* 590 F.2d 91, 94 (4th Cir. 1978): "The ability to work only a few hours a day or to work only on an intermittent basis is not the ability to engage in 'substantial gainful activity.'" (Quoted in *Kornock v. Harris,* 648 F.2d 525, 527 (9th Cir. 1980)). Dr. Sandell, although he had earlier opined that plaintiff was capable of performing "clerical work," declared in his July, 1980 report that he considered plaintiff "totally disabled" because "according to Mr. Randolphi's symptoms it appears that he would be unable to sit at least six hours of an eight-hour work day." Tr. 133.

A doctor's uncontroverted medical testimony may not be disregarded. The ALJ must articulate clear reasons for rejecting such an opinion, *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975), unless it is clinically unsupported. *Laffoon v. Califano,* 558 F.2d 253 (5th Cir. 1977). Here, Dr. Sandell's opinion is entitled to weight as indicating his opinion of the severity of the residual impairment. *See Rhodes v. Schweiker,* 660 F.2d 722, (9th Cir., 1981). But there is no clinical or laboratory evidence reported by Dr. Sandell or Dr. Prussack that would indicate that plaintiff is physically unable to sit for a total of six hours a day; Dr. Sandell draws that conclusion from plaintiff's reported inability to sit for more than an hour at a time without changing position. It may be inferred that he does not find that reported symptom incompatible with what he knows of plaintiff's condition. But his opinion is based on the condition as reported by plaintiff himself. Clinically, Dr. Prussack and Dr. Sandell found no neurological deficit, although there was diminished left knee-jerk reflex, and they found chiefly a limited range of spinal motion and point tenderness around the surgical scar, while muscular strength and mobility was otherwise unimpaired.

Thus, the only real evidence of plaintiff's inability to sit for enough hours in a day to perform a regular shift of sedentary work is Dr. Sandell's extrapolation from plaintiff's reported difficulty in sitting without a change in position or movement for over an hour at a time. That does not answer the question whether plaintiff could regularly perform such labor with brief breaks to move about or rest his back at intervals throughout the day.

The ALJ addressed that question to the plaintiff himself in the course of the hearing, at which plaintiff was represented by counsel. The ALJ reported this colloquy in his opinion, and it is found at pages 48–49 and 51 of the Transcript. Asked if he could, from a physical standpoint, hold an "office job," plaintiff responded that he felt he could, given the proper training and the freedom to "get up and move around" or take up a new position for five to fifteen minutes after an hour or so of sitting, especially if he had a hard-backed chair.

Plaintiff's own report of his condition, then—the chief source for both the doctor's and the ALJ's opinions concerning his ability to sit at a desk or bench long enough to put in a day's work—is the substantial evidence upon which the ALJ's finding of sedentary residual capacity is based. No doubt the restrictions plaintiff describes would eliminate some jobs in the sedentary category, but plaintiff does not argue, nor does it seem likely, that occasional movement or respite would rule out so many jobs as to "significantly compromise" the range of sedentary work (*see* Rule 201.00 of Appendix 2) and thus make the grid inapplicable.

Plaintiff simply argues that the ALJ was wrong because plaintiff cannot sit at least six hours a day, but the ALJ has plaintiff's own testimony to indicate that a full work day is possible, given a good chair and an opportunity to move about for a few minutes periodically.[1]

In sum, there is substantial evidence in plaintiff's own testimony to support the ALJ's finding of residual functional capacity in the sedentary range. That is the only finding contested by plaintiff, and it must stand even though another result could have been reached by a different fact-finder presented with the same evidence. Plaintiff argues in addition, however, that the later granting of benefits by the Social Security Administration, when there is no indication that plaintiff's condition had changed, indicates that "there should be no hiatus in the Social Security Disability Benefits provided to the claimant." Supplemental memorandum, at 2.

This argument is without legal significance. Reviewing the ALJ's 1980 decision, this Court is concerned only with the procedural propriety of that decision and its basis in substantial evidence in the record made at the time. If the decision was based on substantial evidence then, as the Court has concluded above that it was, it must be upheld even if the Social Security Administration later decides to award benefits for a later period.[2]

*Conclusion*

There was substantial evidence to support the ALJ's finding that plaintiff was capable as of July 1979 of performing sedentary work unrelated to his previous employment. The ALJ properly applied the sequential process detailed in the regulations to arrive at this finding of non-disability. Moreover, the Secretary's later award of a period of disability does not affect the validity of the decision to deny benefits in 1980. Accordingly, the decision of the Secretary to deny benefits for the period in question is AFFIRMED.

IT IS SO ORDERED.

---

1. The ALJ also considered the aggravating factor of plaintiff's constant or frequent "dull ache" in the back. Pain itself is disabling only if not remediable to a degree that substantial work is possible. *Harvey v. Finch*, 313 F.Supp. 323 (N.D.Cal.1970), *aff'd*, 451 F.2d 589 (9th Cir. 1971). Plaintiff stated here that he had "learned to live with" this ache and could control it with medication. The doctors' reports are consistent with this conclusion.

2. Although there is no evidence before the Court as to the reasons for the administrative decision to grant benefits in 1981, it might be noted that plaintiff was then nearly fifty. At age fifty the grid places claimants in a different category from the forty-five to forty-nine age group; for plaintiff's combination of functional and vocational factors, that means the difference between a finding of non-disability and one of disability. *Compare* Rule 201.21 *with* Rule 201.14 of Appendix 2.