James SAMPLE, Plaintiff-Appellant,

v.

Richard SCHWEIKER *, Secretary of Health and Human Services, Defendant-Appellee.

No. 81–5299.

United States Court of Appeals, Ninth Circuit.

Submitted July 28, 1981.

Decided Dec. 14, 1982.

---

* Pursuant to Fed.R.App.P. 43, we substitute the name of Richard S. Schweiker, successor to the original appellee as Secretary of the U.S. Department of Health and Human Services.

Alan M. Schiffman, Phoenix, Ariz., for plaintiff-appellant.

Karin Kirksey Zander, Asst. U.S. Atty., Phoeniz, Ariz., for defendant-appellee.

Before KENNEDY and NORRIS, Circuit Judges, and McNICHOLS,** District Judge.

ROBERT J. McNICHOLS, District Judge:

Appellant filed for disability benefits under both Title II and Title XVI of the Social Security Act on September 9, 1975. After initial adverse agency determination, a hearing was held on January 18, 1977 which resulted in a finding of no disability. Upon exhaustion of administrative appeal, suit was initiated in district court. The trial court, having heard argument on the government's Motion for Summary Judgment and the claimant's alternative Motions for Summary Judgment or Remand to the Administrative Law Judge (ALJ), granted the government's motion and denied the claimant's, but remained silent as to disposition of the remand question.

By order of this Court dated January 8, 1981, 9th Cir., 639 F.2d 790, the court below was directed to consider whether good cause existed to remand to the ALJ. Thereafter, the trial judge amended his earlier ruling and concluded that the remand issue had been properly considered and denied. The case is once again before us for consideration of whether the ALJ's findings are supported by substantial evidence.[1]

** Hon. Robert J. McNichols, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

1. Upon initial appeal, the issues were two-fold: (1) substantiality of the evidence; and (2) whether remand for additional fact finding pursuant to *Kemp v. Weinberger,* 522 F.2d 967 (9th Cir.1975), would be appropriate. Despite an invitation to file supplemental briefs, the parties have elected to stand on their original arguments.

It may well be that adequate briefing would have opened the door for consideration of the trial court's denial of the motion for remand based on new evidence. This question is not now before us, however, and we decline to raise it *sua sponte.* Discussion is thus limited to the substantial evidence issue and is framed in terms of that evidence available to the ALJ at the time of hearing. With respect to the additional factual matters claimant has presented in brief, "[a]ny deterioration in [appellant's] condition subsequent to that time is, of course, irrelevant." *Waters v. Gardner,* 452 F.2d 855, 858 (9th Cir.1971).

## I. EVIDENCE PRESENTED

Appellant alleged numerous afflictions of a continuing nature over the past decade: lower back and leg pain, osteoarthritis, cysts, alcoholism, mental disorders, multiple drug dependence and abuse, and bleeding ulcers. Reports of a number of physicians were taken in evidence. Briefly summarized, Dr. Asendorf, an internal medicine specialist, stated that appellant had experienced progressively increasing lower back pain which precluded lifting or prolonged standing. A severe limitation of lateral bending and spinal rotation was also observed.[2] He concluded, however, that such spinal problems appeared to be stabilized. Although an alcoholic, Sample was currently not drinking. He demonstrated no recent symptomology of abdominal pain or hematemesis thus indicating that the ulcerous condition was under control. In all of these matters, the appellant was the historian, but Dr. Asendorf believed Sample to be reliable and well motivated.

With respect to the alleged emotional disorders, the doctor felt that appellant had generally handled his passive-aggressive personality well, and that residual problems stemmed from claimant's inability to rid himself of internal hostilities. In conclusion, the physician thought appellant generally free of distress and capable of handling sedentary work.

Dr. DeMoss, a general practitioner, performed a limited diagnostic survey and noted lower back pain, gastritis, and anxiety. Treatment consisted only of analgesics, diet and rest. Dr. Beal, a psychiatrist, concluded that appellant suffered a dissociative reaction characterized by a split personality, and believed Sample to be in need of in-depth psychotherapy. He also stated that it was his opinion that appellant was disabled. Another psychiatrist, Dr. Menendez, noted that Sample was currently free of both his historical alcoholism and drug dependence. Concluding residual schizophrenia coupled with a marginal level of functioning, this physician stopped short of considering appellant disabled.

Appellant testified that he was currently employed but remained in pain, that he believed himself possessed by two personalities: one evil and the other good, and that he was under medication designed to control both pain and emotional disorders. He also testified as follows:

Q. All right. What is the major reason that you can't work today?

A. Well I can, I can work. I can work.

Q. You can work? Well, what are we doing here?

A. I can work, but it's just that I can't keep a job.

Q. Why can't you keep a job?

A. I can, if I take my pain pills, wear my brace. I can work.[3]

In testimony before the ALJ, a vocational expert, Dr. Peterson, was asked his evaluation of appellant based on two hypotheticals posed by the hearing examiner. He was asked first whether appellant could be gainfully employed if all exhibits and evidence, including Sample's testimony, were taken in a light most favorable to the claimant. The response was negative. He was then asked his evaluation of appellant's employability assuming the existence of all physical abnormalities alleged, but at the same time that the back pain, alcoholism, and mental

---

2. A laboratory report evidenced moderate spinal abnormality.

> Lumbosacral spine is normal except for minimal narrowing of the lumbosacral joint, suggesting the possibility of disc pathology here. There are no other findings except for minimal arthritic lipping and spurring of the body of L5.

> Appellant had undergone a laminectomy in the lumbar region approximately seven years previous.

3. The ALJ apparently relied heavily upon the appellant's own conception of his ability to work. In response to the quoted language, the law judge replied:

> That is what we call an admission against interest. The statute that we are working with provides that you would be entitled to benefits if you are prevented from working because of a physical or mental impairment or any combination of physical or mental impairments.

> Now, you are telling me that you can work.

disorders were controlled by medication. The answer to this hypothetical was affirmative.

Dr. Peterson then proceeded to list the following occupations which he believed claimant was capable of handling: self-service gas station attendant, meter reader, building guard, parking lot attendant, inventory clerk, and retail sales. He characterized these as "light and sedentary kinds of jobs, that would not aggravate [claimant's] back problem."

## II.  SCOPE OF REVIEW

Our sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir.1980). Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971). In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence. *Beane v. Richardson,* 457 F.2d 758 (9th Cir.1972), *cert. denied,* 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); *Wade v. Harris,* 509 F.Supp. 19, 20 (N.D.Cal.1980). The ALJ need not substitute the judgment of expert witnesses for his own. 20 C.F.R. § 404.-1526–27; *cf., Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975) (reason for rejection must be offered where such testimony is uncontroverted). Where as here, medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Waters v. Gardner,* 452 F.2d 855, 858 n. 7 (9th Cir.1971); *see also Calhoun v. Bailar,* 626 F.2d 145, 150 (9th Cir.1980).

## III.  ANALYSIS

### A.  *Physical Impairment*

The ALJ considered each alleged medical infirmity in light of the expert opinions available. It was generally agreed by all physicians commenting on the subject that appellant's alcoholism and drug dependency were currently under control. Only Dr. Asendorf discussed Sample's history of ulcers, and he concluded that the lack of recent symptomology indicated this condition to be stabilized. Sample testified to a three-day bout of hematemesis immediately preceding the hearing, but no medical reports substantiating this contention were filed. By appellant's own testimony the existence of cysts had never precluded him from working for more than three months at a time, thus falling short of the one year disability requirement of 42 U.S.C. § 423(d)(1)(A). Claimant's past osteoarthritis was noted by Dr. Asendorf, and while he observed a severe limitation of lateral spinal movement, at the same time he concluded that any degenerative process was currently stabilized, that appellant was then free of distress, and that he was probably capable of gainful employment in a sedentary position.

Finally, appellant's subjective report of pain was rejected on the strength of his own testimony relating that "he could walk a mile," was capable of working so long as he obtained medical treatment, and was presently gainfully employed.

Based on the evidence available and the ALJ's well-settled role as the judge of credibility, we cannot say that any of the conclusions related to physical ailments were unsupported by substantial evidence.

### B.  *Emotional Disorder*

The more difficult question concerns appellant's alleged emotional disorder. It appears to be undisputed that the claimant had a lengthy history of such problems as evidenced by his out-patient status with a state mental hospital as a teenager and young adult and his discharge from the service because of inability to adjust. More recently, he had been characterized by physicians as possessing a passive/aggressive personality, residual schizoid tendencies and in need of in-depth psychotherapy. The existence of emotional disorder, however, is not *per se* disabling. *Russell v. Secy. of HEW,* 540 F.2d 353 (8th Cir.1976). "In

addition, there must be proof of the impairment's disabling severity." *Rhodes v. Schweiker,* 660 F.2d 722, 723 (9th Cir.1981). In the present case, the ALJ found that appellant was "mildly impaired" but dismissed this condition as inadequate to support a conclusion of disability. The inquiries become whether appropriate weight was assigned to medical evidence presented, *see Rhodes v. Schweiker, supra,* at 723 n. 1; and whether the totality of évidence could reasonably lead to a conclusion that whatever level of disorder existed was amenable to control. *Lind v. Gardner,* 434 F.2d 1313, 1314 n. 2 (9th Cir.1970), *cert. denied,* 402 U.S. 948, 91 S.Ct. 1602, 29 L.Ed.2d 117 (1971).

■ The only physician to conclude appellant's condition as debilitating was Dr. Beal. His report consisted of eight brief sentences, and all those of a judgmental nature are conclusory and without clinical support. In sharp contrast to Dr. Beal's conclusion that claimant "is considered as disabled insofar as his ability to hold a job or work in any consistent manner" is appellant's own testimony that his emotional impairment "is minimized" if he takes his medication. That the ALJ chose to adopt the testimony of appellant and Drs. Asendorf and Menendez over that of Dr. Beal was well within his prerogative. *Waters v. Gardner, supra,* at 858 n. 7; *see also, Randolphi v. Schweiker,* 532 F.Supp. 579, 583–84 (N.D.Cal.1982).

## IV. ROLE OF THE VOCATIONAL EXPERT

The burden is on the claimant initially to demonstrate an inability to pursue his customary occupation.[4] *Giampaoli v. Califano,* 628 F.2d 1190, 1193 (9th Cir.1980). Once having done so, the burden shifts to the Secretary to show "that the claimant can engage in other types of substantial gainful work that exists in the [national] economy." *Johnson v. Harris,* 625 F.2d 311, 312 (9th Cir.1980). Such employment must involve realistic job opportunities. *Vidal v. Harris,* 637 F.2d 710, 713 (9th Cir.1981). Reference to such employment probabilities should be specific. *Hall v. Secretary of HEW,* 602 F.2d 1372, 1374 (9th Cir.1979).

■ In light of these well established principles, the ALJ sought testimony from Dr. Peterson, a psychologist with credentials as a vocational expert. Critical to the validity of the hypothesis posed was the presumed fact which required the expert to "assume that claimant suffers from a chronic schizophrenia, and dissociative reaction, and that it is controlled by medication." Appellant contends that by so hypothesizing, the ALJ improperly limited the scope of evidence this expert was allowed to consider in framing his testimony. In support of this proposition, appellant cites *Chester v. Mathews,* 403 F.Supp. 110 (D.Md. 1975):

A vocational expert's opinion in a disability case is only worthwhile if it is based on a consideration of *all* other evidence that has been brought out in a case.

*Id.* at 118 (emphasis added).

■ Such authority misconstrues the discrete functions served by the ALJ and a vocational expert. The former weighs the evidence for probity and credibility. The latter merely translates factual scenarios into realistic job market probabilities.[5] It is

---

4. Appellant's scope of past employment experience has been so incredibly varied that it would be impossible to define his "customary occupation." The ALJ concluded, by implication at least, that those jobs involving heavy manual labor were beyond claimant's present capabilities at the time of the hearing. The burden thus shifted to the Secretary to demonstrate appellant's ability to engage in gainful activity.

5. The days of requiring testimony from vocational experts in order to satisfy the Secretary's burden may be numbered. While this Circuit has not yet considered the question, a number of trial courts have concluded that the most recent regulations promulgated, which translate residual capacity into employment opportunity in objective terms, may obviate the need for such expert opinion. *Simonsen v. Secy. of HHS,* 512 F.Supp. 1064, 1065 (S.D.Cal.1981) and cases cited therein construing 20 C.F.R., Part 404, Subpart P, App. 2 (effective February 26, 1979). *But see Davis v. Schweiker,* 536 F.Supp. 90, 97 (N.D.Cal.1982) and authorities cited therein. Resolution in this Circuit will necessarily await an appropriate case.

true that such an expert's testimony is valuable only to the extent that it is supported by medical evidence. *Kornock v. Harris,* 648 F.2d 525, 527 (9th Cir.1980). But that is not the same as saying that it is the vocationalist's role to determine the validity of medical opinion offered.[6] This function is uniquely within the ambit of the ALJ, and the limitation of evidence contained in the hypothetical at issue would be objectionable only if the assumed facts could not be supported by the record. *Cf., Glass v. Weinberger,* 517 F.2d 224 (6th Cir.1975) (hypothetical not supported by substantial evidence). For reasons stated previously, those factual suppositions are amply supported.

Accordingly, we AFFIRM.

---

**6.** Dr. Peterson held a Ph.D., not a medical degree. Thus, despite his unchallenged expertise as a vocational expert, he was not qualified to pass on the medical implications of the evidence presented, or upon the validity of the conclusions presented in the physicians' reports.