52 F.3d 332
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Baudelio DELGADO, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-56684.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 3, 1995.*
Decided April 13, 1995.
 
 1
 Before: D.W. NELSON and CANBY, Circuit Judges, and TANNER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Baudelio Delgado appeals the ruling of the district court affirming the decision of the Secretary of Health & Human Services (the "Secretary") to discontinue Social Security disability benefit payments under the Social Security Act, 42 U.S.C. Sec. 423(f)(1), because of medical improvement. Delgado argues that the district court erred because the Secretary failed to carry her burden to demonstrate medical improvement sufficient to allow Delgado to engage in substantial gainful activity. In particular, Delgado claims that the Secretary (1) failed to consider his subjective claims of excess pain, (2) improperly disregarded his treating physicians' reports, (3) disregarded a vocational evaluation report, and (4) improperly relied on the testimony of a vocational expert regarding available jobs within Delgado's limitations. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I. STANDARD OF REVIEW
 
 4
 We review a district court's order upholding the Secretary's denial of benefits de novo. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.1995). "The scope of our review, however, is limited: we may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." Id.
 
 II. DISCUSSION
 
 5
 A. Waiver of Excess Pain and Treating Physicial Claims
 
 
 6
 The government argues that Delgado waived his claim that the Secretary improperly discredited his subjective complaints, because he did not raise it before the magistrate judge granted summary judgment to the Secretary. However, the ALJ and the magistrate judge reviewed Delgado's subjective complaints in the context of assessing the vocational evaluation report prepared by Aba Pacifica in January 1991. Our consideration of this issue necessarily entails a review of the ALJ's decision not to credit Delgado's subjective complaints. See infra section C.
 
 
 7
 We hold, however, that Delgado waived his claim that the Secretary inappropriately disregarded his treating physicians' reports because he failed to raise it before the district court. See Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).
 
 B. Medical Improvement
 
 8
 The regulations define medical improvement as a decrease in the medical severity of impairments that were present at the time of the most recent finding of disability. 20 C.F.R. Sec. 404.1594(b)(1). Changes in symptoms, signs, or laboratory findings must indicate medical improvements related to the ability to do work. 20 C.F.R. Sec. 404.1594(b)(3).
 
 
 9
 The Secretary initially found Delgado disabled because the compound lower extremity fractures from the work-related accident were not expected to heal within 12 months, nor was Delgado expected to be able to bear his full weight without assistance within that period of time. It is uncontroverted that, by 1983, Delgado's fractures had healed completely and he was weight-bearing, although he had a residual abnormal gait with associated chronic lower back pain and some peripheral nerve damage (paresthesia and dysthesia) not affecting motor nerves. In 1986, Dr. William Nelson indicated that Delgado no longer walked with an abnormal gait and needed no assistive devices, though his subjective complaints indicated pain after prolonged sitting or after lifting more than 20 pounds. Similarly, in March 1989, Dr. Don Kim found that Delgado's gait was normal, including heel and toe walking ability. Even Dr. Fred Hafezi, a physician first consulted by Delgado after Delgado received notice of the 1989 continuing disability investigation, noted in August 1989 that Delgado could return to "a semisedentary type of job" despite his subjective complaints that he could not work.[1] At the ALJ hearing, Dr. Mann, a consulting neurologist, testified that Delgado could lift ten pounds, walk several blocks without rest, stand for two hours at a time followed by rest periods of 15 minutes, or sit for three to four hours followed by 15 minute breaks to move around. Although Dr. Mann noted that the medical records indicated that Delgado suffered some dysthymia (mood changes) due to chronic pain, he testified that Delgado's subjective complaints were out of proportion to the objective findings. At the hearing, Delgado's attorney also conceded that Delgado had improved medically, but she relied on the consideration of vocational factors to establish continuing disability. Therefore, we affirm the Secretary's determination of medical improvement as supported by substantial evidence in the record as a whole.
 
 
 10
 C. Failure to Credit a Vocational Evaluation based on Delgado's Subjective Complaints
 
 
 11
 Delgado argues that the Secretary's finding that he is not disabled because he retains a residual functional capacity to perform sustained work disregards both his subjective complaints and the Aba Pacifica vocational assessment conducted in January 1991, which found that Delgado had significant problems concentrating on work because of pain and inability to stand or sit for prolonged periods. The ALJ, however, provided specific reasons for finding that Delgado's subjective complaints were not credible. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.1989). The ALJ noted (1) significant gaps in medical treatment from 1979-1982, 1983-1986, and 1986-1989; (2) Delgado's inconsistent statements about his progress during the initial period when he received no medical treatment; (3) the fact that Delgado initiated the 1989 treatment with Dr. Hafezi after he was informed of the continuing disability investigation; and (4) Delgado's inconsistent statements reporting limitations on his daily activities, such as the amount of driving, fishing, and yard and household chores in which he engaged. See Flaten, 44 F.3d at 1464 (finding it appropriate to disregard unsupported, self-serving statements); Matney, 981 F.2d at 1020 (considering a claimant's accounts of daily activities in evaluation of the claimant's subjective complaints); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) (finding it appropriate to consider "an unexplained, or inadequately explained, failure to seek treatment"). The ALJ also indicated that he found no support in Dr. Lucach's treatment reports,[2] because Dr. Lucach reported prescribing medication for Delgado's subjective pain complaints after April 1989, but did not provide any objective medical findings. Even though Dr. Lucach purported to have examined Delgado twice monthly after July 1991, he documented only two actual visits--one in November 1991 and another in January 1992. The ALJ noted that both Dr. Hafezi's and Dr. Lucach's assessments were based to a large extent upon Delgado's own accounts of his symptoms and limitations. See Flaten, 44 F.3d at 1463-64; Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433-34 (9th Cir.1988).
 
 
 12
 The ALJ credited the extensive medical reports from Drs. Nelson, Kim, Kappeler, Woodard, Hafezi, and Mann that suggested that Delgado had medically improved to a point where he could do some kinds of sedentary work, within postural limitations. The ALJ discounted the February 1991 Aba Pacifica vocational assessment, which suggested that Delgado's decreased functional capacity was inconsistent with any sustained work based on his low level of concentration and inability to stand or sit, because it relied on Delgado's medically unsupported, subjective complaints. See Sample v. Schweiker, 694 F.2d 639, 643-44 (9th Cir.1982). We agree that these observations--which are subject to a claimant's motivation to secure continued disability status--have little merit, whether conducted by an independent contractor or by an ALJ. See, e.g., Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir.1985) (condemning consideration of an ALJ's personal observations of the claimant, not based on medical evidence, as "sit and squirm" jurisprudence). Accordingly, we affirm the ALJ's decision to discredit Delgado's subjective complaints and the Aba Pacifica vocational assessment.
 
 
 13
 D. Number of Jobs With the Necessary Postural Limitations
 
 
 14
 An ALJ may not rely on the medical-vocational grid as the sole basis for the determination regarding work potential if the grid does not reflect the claimant's particular limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.1985). Here, however, the ALJ specifically stated that the guidelines, along with the vocational expert's testimony regarding availability of jobs within Delgado's particular postural limitations, provided a framework for the analysis. See Kail v. Heckler, 722 F.2d 1496, 1498, 1498 n. 1 (9th Cir.1984) (noting the use of the grid as a "framework" for determinations that involve additional limitations not included within the guidelines). The grid alone suggested that a younger, illiterate individual with a marginal education, minimal English language skills and no transferable job skills would not be disabled if the range of sedentary work available to him were not significantly compromised. 20 C.F.R. Sec. 404, subpart P, app. 2, 201.00(h). In determining whether the range of sedentary work available in the national economy provided sufficient opportunities for Delgado, the ALJ appropriately gave significant weight to the testimony of vocational expert Mary Torrez, who testified that there were at least 2,500 packing and sorting jobs that Delgado could do within the restrictions that Dr. Mann found necessary.[3] According to our precedent, twenty-five hundred is a significant number of jobs. See, e.g., 42 U.S.C. Sec. 423(d)(2)(A) (requiring the Secretary to determine that the claimant can still engage in substantial gainful work that "exists in significant numbers" in the national economy); Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478-80 (9th Cir.1989) (and cases cited therein) (finding that 1,266 is a significant number of jobs).
 
 
 15
 Contrary to Delgado's contention, the ALJ was not bound to accept the vocational expert's conclusions derived from Delgado's more restrictive hypothetical that applied the results of the Aba Pacifica vocational assessment. See Magallanes, 881 F.2d at 756. The medical evidence, especially Dr. Mann's testimony and Delgado's own testimony regarding the amount of weight-lifting he could do without pain, fully support the restrictions in the ALJ's hypotheticals. See Sample, 694 F.2d at 643-44 (noting that an ALJ is the appropriate judge of the weight of the medical evidence in formulating hypotheticals for vocational assessment). Thus, we hold that the ALJ appropriately concluded that there were significant numbers of jobs in the economy which Delgado could perform with his postural limitations.
 
 III. CONCLUSION
 
 16
 In summary, we hold that we need not address Delgado's claim that the Secretary disregarded the treating physicians' reports because Delgado failed to raise the issue below. The Secretary did not err in stating specific reasons, based on Delgado's statements and the medical evidence in the record as a whole, to discredit Delgado's subjective complaints and thus disregard the results of the Aba Pacifica observation study. Nor did the Secretary err in utilizing the medical-vocational grid and the testimony of the vocational expert to assess the availability of jobs within Delgado's particular postural limitations. The Secretary was not required to accept Delgado's version of more restrictive limitations based on the Aba Pacifica study, when objective medical evidence supported the limitations assessed. Therefore, we hold that the Secretary's determination that Delgado's disability had ended was based on substantial evidence in the record as a whole.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 After the fall of 1989, Hafezi did not see Delgado again until August 1990, when he noted total recovery in the right knee and normal gait, but concluded that Delgado was "totally and permanently disabled from any type of work" because of osteophytic encroachment. Because this determination conflicted with other medical evidence and considered vocational issues beyond the medical doctor's expertise, the ALJ was not required to give it significant weight. Sanchez v. Secretary of Health And Human Services, 812 F.2d 509, 511 (9th Cir.1987); Magallanes v. Bowen, 881 F.2d 747, 753-54 (9th Cir.1989)
 
 
 [2]
 Delgado also claims that Dr. Lucach was a treating physician whose reports should be given significant weight. In addition to providing no objective evidence controverting the conclusion of medical improvement, Dr. Lucach's reports are not persuasive because they were prepared at Delgado's request for "legal purposes" in connection with the continuing disability investigation. See Flaten, 44 F.3d at 1463 (noting that reports solicited to buttress a case after a negative ALJ decision are less persuasive) (quoting Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir.1989)); Matney, 981 F.2d at 1020 (finding that a doctor's assessments are entitled to less weight when the doctor acts as an advocate in preparing a meaningful petition for Social Security benefits)
 
 
 [3]
 Dr. Mann imposed postural limitations preventing stooping, crawling, lifting more than 10 pounds, standing longer than two hours without a rest break, or sitting longer than three or four hours without a break