**Fred A. MALAK, Plaintiff–Appellant,**

v.

**Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant–Appellee.**

**No. 05–56509.**

United States Court of Appeals, Ninth Circuit.

Submitted June 8, 2007.*

Filed Aug. 29, 2007.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

John Ohanian, Esq., Attorney at Law, Palos Verdes Peninsula, CA, for Plaintiff–Appellant.

Theophous H. Reagans, Esq., Social Security Administration, Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before: HALL and CALLAHAN, Circuit Judges, and REED,** District Judge.

## MEMORANDUM ***

The Appellant, Fred Malak, seeks reversal of the district court's order affirming the Commissioner's denial of social security disability benefits. Malak argues that the findings of the administrative law judge ("ALJ") were not supported by substantial evidence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo the district court's affirmance of the Commissioner's decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.2007). The decision of the Commissioner will be affirmed if free of legal error and supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996). Substantial evidence is "more than a mere scintilla, but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006). Where the evidence can rea-

sonably support either affirming or reversing the decision, the judgment of the reviewing court may not be substituted for that of the Commissioner. *Parra*, 481 F.3d at 746.

Malak claims that he was disabled due to a heart condition prior to December 31, 1988 (the last date when he was covered by social security). Malak did not file his application for benefits until October of 1995.[1] Because Malak waited so long to file his application many of the medical records detailing his medical condition in the 1980s had been lost or destroyed, and some of the remaining records were of questionable authenticity. Much of Malak's case therefore depends on extrapolating his probable condition in 1988 from later medical examinations, as well as Malak's own testimony.

■ The ALJ found that Malak "is of low credibility," and gave "minimal weight to his testimony." Malak argues that the ALJ's adverse finding on credibility was not supported by substantial evidence. The ALJ gave a long list of reasons for doubting Malak's credibility, some of which clearly cast doubt on Malak's testimony. For example, Malak's testimony as to his past job responsibilities was at odds with a vocational report which Malak had signed a few years earlier. The ALJ therefore gave "clear, convincing and specific reasons" for finding Malak not credible. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.2005). The ALJ did not err in finding Malak not credible.

■ Next Malak argues that the ALJ erred in holding that some of the records

---

** The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because the parties are familiar with the factual and procedural history of this case, we do not recount it in detail here.

submitted by Malak were inauthentic. Because California law requires health care providers to retain medical records for only seven years, many of the records which might have supported Malak's case were destroyed. However, Malak claimed to have obtained records from this period from his doctors. Some documents were undated and relied on Malak's testimony to establish the date and the authenticity of the records. Strict rules of evidence do not apply in this type of administrative proceeding. *See* 42 U.S.C. § 405. Nevertheless, the ALJ's conclusion that these documents were not authentic, especially in light of Malak's poor credibility, was supported by substantial evidence.

■ The remaining records from 1987 and 1988 paint an incomplete picture of Malak's condition at that time. Noting that the burden was on Malak to prove a disabling medical condition, the ALJ concluded that these incomplete records from 1987 and 1988 were consistent with a moderate heart condition but did not prove that Malak was unable to do light work in 1988. This conclusion was supported by substantial evidence.

Malak argues that the ALJ erred in relying upon the opinion of the medical expert, Dr. Mills, rather than on the opinions of numerous treating and examining physicians as to what his condition would have been in 1988.[2] In particular, Malak relies on the assessment of Dr. Abrahim who treated Malak from 1986 to 1989 and who completed a physical residual functional capacity ("RFC") questionnaire in 1997 describing Malak's medical problems.

Malak correctly notes that the opinions of treating physicians generally are accorded more weight than the opinions of non-treating physicians. *See Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995) (noting the hierarchy of treating physicians, examining physicians and non-examining physicians). We have also explained that: "It is not necessary, or even practical, to draw a bright line distinguishing a treating physician from a non-treating physician. Rather, the relationship is better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact." *Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1038 (9th Cir.2003) (quoting *Ratto v. Sec'y, Dep't of Health & Human Servs.,* 839 F.Supp. 1415, 1425 (D.Or.1993)).

■ In the instant case, Dr. Abrahim was a treating physician, but he had not treated Malak for eight years prior to making his evaluation. Moreover, on the first page of the RFC questionnaire there is a space to identify "the clinical findings and objective signs" of the patient's impairments. Abrahim left this space blank, and the ALJ noted that Abrahim's assessment was not supported by clinical findings. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, concluso-

---

2. Dr. Mills's testimony was not entirely consistent, and an ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. §§ 404.1512(e), 416.912(e). Although Malak does not raise this requirement with respect to Dr. Mills's testimony, the dissent would address this issue sua sponte because it is a purely legal issue and the pertinent record has been fully developed. Dissent Op. ——. We decline to

do so, as Malak failed to put the government on notice of the need to address any potential discrepancies, the scope of the ALJ's duty to explore these discrepancies, and the possible prejudice that resulted from any error. The panel has thus been deprived of both parties' briefing and argument on this issue. This litigation has been ongoing for more than a decade, and even assuming there was error, it may nonetheless have been harmless.

ry, and inadequately supported by the clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002). We cannot say that the ALJ erred in according Abrahim's opinion minimal weight. Given a long hiatus between treatment and Abrahim's opinion, the justification for according more weight to treating physicians (namely, that they have a better "opportunity to know and observe the patient as an individual," *Rodriguez v. Bowen,* 876 F.2d 759, 761 (9th Cir.1989)) is significantly reduced and the importance of citing objective medical evidence is increased. The precedents, therefore, support the ALJ's decision to accord less weight to Abrahim's opinion given the facts in this case.

■ Malak further contends that the opinions of several other treating physicians, who treated him after 1988, should have been accorded greater weight. However, other than Abrahim, none of these physicians treated Malak in 1987 or 1988, and thus while their opinions were relevant they were necessarily speculative as to his condition in 1988. The opinions of these doctors were also conclusory and failed to cite specific documentation. Thus we cannot conclude that the ALJ erred in according little weight to the opinions of physicians who treated Malak after 1988.

Finally, a few other physicians, after examining Malak's medical records, opined that Malak had a severe heart condition dating back to 1987 or 1988. The ALJ considered these opinions but accorded them little weight. Because they were non-examining physicians their opinions were not entitled to any greater weight than that of Dr. Mills.

■ Although the ALJ relied heavily on the opinion of Dr. Mills, the ALJ's ultimate conclusion was supported by substantial evidence. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). Moreover, when "medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Id.* (quoting *Waters v. Gardner,* 452 F.2d 855, 858 n. 7 (9th Cir. 1971)). In this case there was a great deal of medical opinion presented, including testimony from numerous physicians supporting Malak's claim; nevertheless, we cannot say that the ALJ's interpretation of the overall evidence was irrational.[3]

■ Malak's final argument is that the ALJ erred at "step five" of the analysis, in

---

3. The dissent questions the sufficiency of the evidence arguing that the ALJ "grossly mischaracterizes the record" in summarizing Dr. Mills's testimony (Dissent Op. at 487) and that the ALJ "largely prevented Dr. Mills from rendering an opinion as to the onset date based on all the relevant evidence." Dissent Op. at 489. We disagree. The ALJ specifically noted that in Dr. Mills's opinion Malak was disabled in 1988, but the ALJ concluded that this opinion was not supported by sufficient medical evidence. When the ALJ questioned Dr. Mills about his opinion Mills acknowledged that there was no angiography which would demonstrate coronary artery disease and conceded: "I'm being theoretical.... Everything I say is theoretical." The record, therefore, supports the ALJ's conclusion that

Dr. Mills's opinion was not supported by sufficient evidence to prove a disability in 1988. Second, the dissent correctly points out that the ALJ was required to consult a medical expert to help determine the onset of Malak's disability. The ALJ was careful to restrict the testimony of Dr. Mills to evidence the ALJ regarded as relevant and probative. Reasonable people can disagree as to whether the ALJ should have permitted Dr. Mills greater leeway in testifying, or whether the ALJ should have been more careful to sort out apparent inconsistencies in the testimony given by Dr. Mills at the two hearings, but we cannot conclude that the ALJ's treatment of Dr. Mills constituted failure to properly consult with a medical advisor.

which the Commissioner has the burden of showing that the applicant was capable of performing some work. Specifically, Malak argues that the ALJ erred by asking hypothetical questions of the vocational expert which "ignored the opinions of treating physicians" as to Malak's limitations. However, because the ALJ justifiably rejected the opinions of the physicians whom Malak characterizes as treating physicians, the ALJ was not required to incorporate those opinions into the hypotheticals asked of the vocational expert.

**AFFIRMED.**

REED, District Judge, dissenting:

On appeal, Malak contends that the Commissioner's decision was not supported by substantial evidence. I would find that the ALJ's residual functional capacity ("RFC") determination was not based on substantial evidence where the ALJ relied almost exclusively on Dr. Mills' testimony, which was contradictory. I, therefore, respectfully dissent.

At the 2000 and 2003 hearings, Dr. Mills was asked to give his opinion as to Malak's medical condition in 1988, taking into account all the subsequent medical evidence on record. In 2000, Dr. Mills testified that from 1988 through early 1995, Malak had the RFC to lift and carry up to 25 pounds occasionally and 10–15 pounds frequently, to stand and walk for four hours out of an eight-hour day, to sit for six hours out of an eight-hour day, and to occasionally stoop or kneel. (A.R. 686, 699–701, S.E.R. 33, 46–48.)

At the January 2003 hearing, however, Dr. Mills testified that Malak "almost certainly" equaled listing 4.04C from June 17, 1988 through his bypass surgery in June 1995. The ALJ rejected this opinion, stating that it improperly credited Malak's testimony of his symptoms. However, the ALJ's assertion that Dr. Mills was crediting Malak's testimony in the latter opinion grossly mischaracterizes the record. The ALJ asked whether Malak would have equaled a listing in December 1988, "using 20/20 hindsight" and taking "all of the medical evidence" into consideration. (A.R. 1325, S.E.R. 325.) Dr. Mills, when rendering his opinion, clarified that his opinion was based on the records and not on Malak's alleged symptoms.[1] Of course, whether a claimant equals a listing is a question for the Commissioner, so the ALJ was not required to accept Dr. Mills' testimony on this point. *See* Soc. Sec. Ruling 96–5p, 1996 WL 374183 (1996). Nonetheless, Dr. Mills' testimony that Malak equaled a listing in 1988 is plainly inconsistent with his previous testimony that Malak had the RFC for light work.

The medical opinions on record, therefore, consisted of Dr. Mills' internally inconsistent testimony, the opinions of treating physicians, and the opinions of non-

---

1. When Dr. Mills began to answer, the ALJ interrupted to clarify that he was not to base his opinion on Ohanian's hypothetical questions that had made certain representations as to Malak's symptoms in 1988. Dr. Mills made it clear that his opinion was only based on the records, not on Malak's alleged symptoms:

> [ALJ:] Well, now, wait a minute. I want you to answer this question, just not based on his testimony—
> [Dr. Mills:] No. I'm not doing it on that. I'm doing it on the evidence.

> Q   —just on the—
> A   Records.
> Q   —on the records.

(A.R. 1326, S.E.R. 326.) The records before Dr. Mills only consisted of the medical records. He had no transcript of Malak's testimony from the 2000 hearing. Therefore, his insistence that he was only relying "on the records" clearly indicates that he was excluding Ohanian's representations as to Malak's symptoms.

treating physicians. I agree with the majority's conclusion that the ALJ need not have accepted the opinions of the treating physicians because these opinions were brief, conclusory, and inadequately supported by clinical findings. *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002).

However, the opinion of Dr. Aintablian (A.R. 1068–71, S.E.R. 160A–C), a non-examining physician, consists of a detailed analysis of the medical evidence of record. He concludes that, in 1988, Malak had a Class III heart according to the New York Heart Association Function Classification. This classification indicates marked limitations in activities, even during less-than-ordinary activities. Because Dr. Aintablian is a non-examining physician, his opinion was not entitled to any greater inherent weight than that of Dr. Mills. However, Dr. Mills' opinion at the 2000 hearing, on which the ALJ relies, was contradicted by his own testimony at the 2003 hearing. It is the ALJ's responsibility to resolve conflicts in the evidence, but a gross mischaracterization of the record is not a permissible means of doing so. The ALJ's resulting RFC determination, therefore, is not based on substantial evidence on the record as a whole. I, therefore, would remand the case for a proper RFC determination.

I would also remand because the ALJ committed legal error in failing to properly determine the onset of Malak's disability. Here, it is undisputed that Malak was disabled in 1995. The key question, therefore, is whether the onset date of Malak's disability pre-dates the expiration of his

insured status on December 31, 1988. Soc. Sec. Ruling 83–20, 1983 WL 31249 (1983),[2] notes that the onset date is critical in Title II cases because it may be, as it is in this case, "determinative of whether the [claimant] is entitled to or eligible for any benefits." *Id.* at * 1. Where evidence of the onset date is ambiguous, the ALJ must consult with a medical adviser. *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir.1998); Soc. Sec. Ruling 83–20. The ALJ has a duty to fully and fairly develop the record where evidence is ambiguous. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.2001).

It is established that medical evidence post-dating the date a claimant was last insured ("date of last insured") may be relevant in determining whether a disability had an onset prior to the expiration of the claimant's insured status. *See Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1461 n. 5 (9th Cir.1995); *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988). *See also Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 547 (3d Cir.2003); *Ivy v. Sullivan,* 898 F.2d 1045, 1049 (5th Cir. 1990); *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir.1984); Soc. Sec. Ruling 83–20. As the majority notes, much of Malak's claim depended on extrapolating his probable condition in 1988 from medical evidence post-dating the date of last insured (such evidence is hereinafter referred to as "subsequent medical evidence"). Subsequent medical evidence is particularly useful in a case, like the one at bar, where it is clear that the claimant became disabled at some point in time, but

**2.** Social Security Rulings are issued by the Commissioner to clarify the social security regulations and the agency's policies. *Holohan v. Massanari,* 246 F.3d 1195, 1202 n. 1 (9th Cir.2001). While they are binding on all components of the Social Security Administration, 20 C.F.R. § 402.35(b)(1), they do not have the force of law. *Holohan,* 246 F.3d at

1202 n. 1. Nonetheless, "because they represent the Commissioner's interpretation of the agency's regulations," they are given some deference insofar as they are not inconsistent with the statute or regulations. *Id.* (citing *Bunnell v. Sullivan,* 947 F.2d 341, 346 n. 3 (9th Cir.1991) (en banc)).

the contemporaneous medical evidence is insufficient to establish whether the onset of disability pre-dates the date of last insured. *See e.g., Ivy,* 898 F.2d at 1048–49 (holding that ALJ erred in determining the claimant's onset date based only on contemporaneous medical evidence where the subsequent medical evidence established an earlier onset date). As the Social Security Administration explains, "With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.... In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Soc. Sec. Ruling 83–20, 1983 WL 31249 at *2

During the November 8, 2000 and January 22, 2003 hearings, the ALJ largely restricted the medical expert to basing his opinion on the contemporary medical evidence; there were only two brief occasions where Dr. Mills was permitted to consider all the relevant medical evidence on record including the subsequent medical evidence. These portions of Dr. Mills' testimony are the most relevant to determining the onset date of Malak's testimony. As was previously discussed, Dr. Mills gave contradictory testimony regarding Malak's onset date on these occasions. When, at the 2003 hearing, Dr. Mills contradicted his previous testimony and indicated a June 1988 date of onset, the ALJ was obligated to continue consulting with Dr. Mills regarding the date of onset by asking him to elaborate and by asking him to explain the apparent inconsistencies in his testimony. *See Tonapetyan,* 242 F.3d at 1150 (ALJ obligated to fully and fairly develop the record where evidence is ambiguous); *Armstrong,* 160 F.3d at 590 (ALJ obligated to consult with medical expert regarding date of onset of disability). The ALJ did not ask him to elaborate and give an opinion as to Malak's RFC in 1988; rather, he repeatedly interrupted Dr. Mills in an apparent attempt to mold his testimony (A.R. 1326–28, S.E.R. 326–28). And, instead of asking Dr. Mills to explain the apparent inconsistencies, the ALJ rejected Dr. Mills' 2003 testimony based on a gross misrepresentation of the record.

Given the ALJ's obligations to fully and fairly develop the record when evidence is ambiguous, *Tonapetyan,* 242 F.3d at 1150, and to consult with the medical adviser regarding the onset date of the disability, *Armstrong,* 160 F.3d at 590, I would find that the ALJ committed legal error when he largely prevented Dr. Mills from rendering an opinion as to the onset date based on all the relevant medical evidence and did not attempt to resolve the conflicts in Dr. Mills' testimony by developing the record further.

On appeal, Malak did not explicitly raise this issue; rather, he argued that, in light of both the subsequent and contemporaneous medical evidence, the ALJ's opinion was not based on substantial evidence on the record as a whole. Despite Appellant's failure to raise this issue, I would nonetheless address it because it falls within a well-established exception to the waiver doctrine: the issue is purely legal and the pertinent record has been fully developed. *See Harden v. Roadway Package Systems, Inc.,* 249 F.3d 1137, 1141 (9th Cir.2001). Deciding this issue would not be unfair to Appellee where Appellant's arguments referenced the key elements of this issue, namely the use of subsequent medical evidence and the contradictions in Dr. Mills' testimony.

Therefore, because the ALJ's determination of Malak's RFC in 1988 was not based on substantial evidence on the record as a whole and because the ALJ erred

in failing to properly determine the onset date of Malak's disability, I would reverse and remand to the district court with orders to remand the matter to the Commissioner.