**Carmen CELAYA, Plaintiff–Appellant,**

v.

**William S. HALTER, Commissioner of The Social Security Administration, Defendant–Appellee.**

No. 01–16964.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed June 17, 2003.

James Hunt Miller, Oakland, California, for the appellant.

Jacqueline A. Forslund, Assistant Regional Counsel, Social Security Administration, San Francisco, California, for the appellee.

Before B. FLETCHER, RICHARD S. ARNOLD,* and RAWLINSON, Circuit Judges.

Opinion by Judge BETTY B. FLETCHER; Dissent by Judge RAWLINSON.

BETTY B. FLETCHER, Circuit Judge.

Plaintiff–Appellant Carmen Celaya appeals the district court's grant of summary judgment to Defendant–Appellee Commissioner of Social Security denying Celaya's application for supplemental security and disability benefits. Celaya, acting pro se through the initial hearing, asserted an inability to work due to diabetes mellitus, high blood pressure, dizziness, headaches, foot pain, fatigue, and, she asserts, at least implicitly obesity. She alleges that the district court over-looked six errors by the ALJ. The most important of these regarded the failure to credit the significance of her obesity, especially as related to her ability to return to work. Because we find that the ALJ did not meet his obligation to develop the record, we reverse the district court's decision and remand for further development of the record, particularly in respect to claimant's obesity.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Carmen Celaya was 57 years old when she applied for supplemental security and disability benefits in August 1996. She is illiterate. In the fifteen years preceding her claim, she was employed as a broccoli buncher, store sampler, and dry-cleaners presser. She stopped working on July 12, 1996. She resumed working part-time in a laundry in August 1997. She did not work during the intervening period of slightly more than a year, reporting dizziness, tiredness, and headaches. Her doctors attributed these symptoms to hypertension, for which she had been treated successfully from April 1994, until at least mid-1995.

Celaya was diagnosed with diabetes in July 1995, which was controlled with medication by December 1995, and remained so throughout the period in question. By that date, her hypertension had become borderline high and continued to climb; her doctors changed her medication by September 1996. Her blood pressure ranged from 190/110 in January 1997, to being "stable" and under "apparently good control" at 140/76 in April 1997, to achieving "finally good control" on July 29, 1997, slightly more than a year after she stopped work. With a Body Mass Index of at least over 44, plaintiff well exceeded the criterion level of 40 that would categorize her as "extremely obese," the highest category used by the SSA. *See* Social Security Ruling 00–3p, 65 Fed.Reg. 31039 (referencing NIH Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults.) Her height was measured at 57″ in November 1996; in an August 14, 1996 disability report, however, an interviewer estimated her height as 53″. During the period for which she asserts eligibility for benefits, her weight ranged from 205 to 213 pounds.

Plaintiff filed her benefits application in August 1996, completing a "Vocational Report" on August 30. On December 10, 1996, a "Physical Residual Functioning Ca-

---

* The Honorable Richard S. Arnold, Senior Circuit Judge of the Eighth Circuit Court of Appeals, sitting by designation.

pacity Assessment" (PRFCA) was prepared by a medical consultant to the Social Security Agency, a procedure authorized by 20 C.F.R. § 404.906. The PRFCA recognized no exertional, postural, manipulative, visual, communicative or environmental limitations on Plaintiff's activities, other than limits on how much she can lift. Despite instructions calling for substantiation of the conclusions, the report contains no discussion and evinces no attention to Celaya's medical record. Apparently based largely upon the PRFCA, the Commissioner administratively denied her application, and after a hearing, the ALJ did likewise. The ALJ found that she could do "light" work, including her past work as a presser in a dry cleaners, despite her impairments. On administrative appeal, the ALJ's decision was adopted as the final decision of the Commissioner on February 25, 2000. Celaya filed her complaint in district court on May 1, 2000. After a hearing, the court granted defendant's cross-motion for summary judgment. Celaya timely appealed to this court.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, but will affirm those factual determinations by the Commissioner, acting through the ALJ, which are supported by substantial evidence. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir.1996).

In assessing a claimant's eligibility for benefits under both 20 C.F.R. Part 404 (Federal Old Age, Survivors, and Disability Insurance) and Part 416 (Supplemental Security Income for the Aged, Blind, and Disabled), the Social Security Agency uses a five-step sequential evaluation process, detailed in 20 C.F.R. §§ 404.1520 and 416.920. Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

### A. Rejected claims.

We find four of Celaya's claims unpersuasive, but discuss them first as they introduce information that will prove essential to deciding her other two claims.

Celaya's argument that the ALJ failed to credit her doctor's statement that she could not work is unavailing. The statement—"It is not clear to me whether she will be able to get her blood pressure under control, and perform gainful employment"—prognosticated what would happen if her hypertension remained uncontrolled. However, Celaya's blood pressure was brought under control before the end of the one-year period required for automatic eligibility for benefits due to a listed disability, rendering the doctor's expressed concern moot.

Celaya argues that she should have qualified automatically for disability status based on her height and weight according to Listing 9.09 (20 C.F.R. Part 404 Appendix 1 to Subpart P, Listing of Impairments 61 Fed. Reg. 28,046–47 (1997)). The record was internally contradictory regarding her height. She argues

that if her height had been found to be less than 57″, her weight would have qualified her automatically for disability status even in the absence of any impairment.[1]  Given that the 57″ figure was the only one reflecting an actual measurement, however, the ALJ's reliance on it was supported by substantial evidence.  If we accept the 57″ figure, Celaya's weight was not consistently over the criterion level of 212 pounds for a one year period.  Thus, the ALJ was correct that she did not qualify automatically as disabled absent any other impairments.

Celaya argues that the ALJ failed to make specific findings regarding her complaints of excess pain.  But, she admitted to not being in continual pain, and the ALJ reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control.  The ALJ's reasons for his credibility determination were clear and convincing, sufficiently specific, and supported by substantial evidence in the record.

Celaya also argues that the ALJ relied on evidence outside the record in determining that she could return to work.  The district court agreed that the evidence, a "December 1996 DDS Medical/Vocational Decision Guide" was not in the record, but points to the PRFCA as providing the same information.

## B.  Failure to include consideration of Celaya's headaches and obesity.

Celaya claims that the ALJ failed to give due consideration to her headaches.  The ALJ found that the headaches were attributable to her high blood pressure, and that because addressing the latter would alleviate the headaches, they need not be considered separately.  Celaya

presents no evidence that would contradict this finding.  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.1996) (plaintiff must submit sufficient evidence of impairment for a multiple impairment analysis to be required).

By contrast, Celaya's obesity was not merely a symptom of either of her diagnosed impairments (i.e., diabetes and hypertension), but an independent condition.  The question is whether it should have been considered by the ALJ in analyzing Celaya's ability to work.  Defendant argues that it should not, for two reasons.  First, because Celaya did not meet the listing criteria for obesity, her obesity has no role in a step three analysis.  In other words, defendant asserts that if obesity is not severe enough to establish a disability at step three by itself, even in the absence of any other impairment, it is not to be considered at all.  Second, because she did not explicitly raise obesity as a factor contributing to her disability, the ALJ had no obligation to consider it.

### 1.  The role of obesity in a multiple factors analysis.

■  Although Celaya did not meet the listing criterion for obesity, that does not mean that the ALJ should ignore it.  The argument that since plaintiff did not meet the listed criteria for obesity, her obesity need not be considered in a multiple impairments analysis gets things backwards.  If a claimant does meet the listing criterion for one or more impairments, she is judged to be disabled without the need to conduct any further analysis.  It is precisely when a condition falls short of the criterion, as here, that such an analysis is appropriate.  *See* 42 U.S.C. § 423(d)(2)(B)

---

1.  This was a correct statement of the law as of 1997.  In 1999, however, the SSA removed obesity from the listing of impairments, 64 Fed. Reg. 46,122.  Obesity may still enter into

a multiple impairment analysis, but only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system.

("In determining whether an individual's ... impairments are of sufficient medical severity that such ... could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."), 20 C.F.R. §§ 404.1545(e), 416.945(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). Furthermore, agency ruling SSR 96–8p states that

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

Celaya's diabetes and hypertension were admittedly each a "severe impairment"—i.e., one that "imposes significant restrictions in the ability to perform basic work activities," *id.*—without themselves being dispositive at step three. Logically, her obesity, though barely short of the criterion, may have fallen into the same category. Given the potential effect of obesity on these conditions, the ALJ had a responsibility to consider their interactive effect.

"In determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan,* 900 F.2d 172, 176 (1990); see also Social Security Ruling 83–19, at 91. The ALJ was responsible for determining the effect of Celaya's obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments. Defendant admits that the ALJ did not do so, even implicitly. On remand, that determination must be made.[2]

### 2. What triggers inclusion of a factor in a multiple impairment analysis.

Defendant argues that even if a multiple impairment analysis would have been appropriate had Celaya explicitly raised her obesity as a disabling factor, she did not do so. The ALJ should nevertheless have included it in such an analysis, for three reasons. First, it was raised implicitly in Celaya's report of symptoms. Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

**2.** The dissent argues that we cite no case authority for the proposition that a combination of non-disabling impairments and non-qualifying disabilities can generate qualification for benefits. *Post* at 1185–1186. We do not see how the regulations cited *supra* could possibly be read otherwise, and if there is a lack of case authority it may be because ALJs have routinely conducted multiple impairment analyses as needed, so that we seldom need to vacate on such grounds. The phrases we quote from 42 U.S.C. § 423(d)(2)(B), 20 C.F.R. §§ 404.1545(e), 416.945(e) and agency ruling SSR 96–8p are models of regulatory clarity. If a *combination* of factors could not qualify an applicant for benefits, and a *single* qualifying factor need be present, there never would be a need for *multiple* impairment analysis. If in the dissent's view *Marcia* is not sufficiently clear "case authority" for the instant case, we trust that the instant case will be sufficiently clear authority on this point for any future cases.

■ The ALJ's exclusion of obesity from his analysis is error in that he was addressing an illiterate, unrepresented claimant who very likely never knew that she *could* assert obesity as a partial basis for her disability. The ALJ always has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983) (citations omitted). When a claimant is not represented by counsel, this responsibility is heightened. *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) notes that:

> [T]he ALJ is not a mere umpire at such a proceeding, but has an independent duty to fully develop the record, especially where the claimant is not represented: ... it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

(citations and internal quotation marks omitted).

The district court's judgment on this claim is therefore reversed. We direct the district court to remand the case to the ALJ for a step-three multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings.[3]

## C. Failure to make detailed and specific findings comparing Celaya's residual functioning capacity with the requirements of her past work as a presser.

■ The ALJ's conclusion that Celaya could work apparently rests upon his comparison of the August 30, 1996 "Vocational Report" (particularly the report on the prior work as a presser) to the December 10, 1996 PRFCA. The PRFCA was completed by Murray Mitts, M.D., a medical consultant. A stamp on its final page is signed by R.M. Good, M.D. and dated March 7, 1997. The stamp states "I have reviewed all the evidence in file, and the assessment of 12/10/96 is affirmed, as written." An additional check mark indicates that "These findings complete the medical portion of the disability determination."

The PRFCA states that no "treating or examining source statement(s) regarding claimant's physical capacities" were reviewed to aid in its completion. It recog-

---

**3.** The dissent warns that we would place ALJs in the position of having to hold "seance-like proceedings" to "divine implicit impairments." *Post* at 1186. Not at all. In the instant case, the fact that Celaya was at most 4' 9" tall and at least over 205 pounds was included in the record. It required trivial arithmetic calculations to determine that her BMI placed her in the "extremely obese" range. Even if the ALJ had previously failed to note her height and weight in the record, meeting Celaya in person should have alerted him that, especially given the relationship between obesity, hypertension and diabetes, he should perhaps compute a BMI to facilitate a multiple impairment analysis. In some cases, the presence of a non-asserted disability in the record (e.g. HIV-positive status) might suffice to trigger the need for additional review even if it is not discernable in person. In other cases, the presence a discernable though non-asserted condition (*e.g.* a missing limb) may suggest the need for additional review even if it is not noted in the record. In cases such as the instant one, the combination of a condition's presence in the record and in person trigger a need for review. In all such cases we ask whether the ALJ has acted reasonably in fulfilling his or her responsibility of scrupulous, conscientious, and diligent inquiry into the facts, as required by *Higbee*. That we defer to ALJ determinations made on substantial evidence in the record does not excuse the ALJ's obligation to develop the record for both his or her analysis and our review.

nizes no exertional, postural, manipulative, visual, communicative or environmental limitations on Celaya's activities, other than limits on how much she can lift. The instructions for the form state that the person completing the PRFCA should "base ... conclusions on all evidence in file" (including observations), "describe how the evidence substantiates [the] conclusions," request "appropriate treating and examining source statements regarding the individual's capacities," "consider[ ] and respond[ ] to any alleged limitations imposed by symptoms (pain, fatigue, etc.) attributable ... to a medically determinable impairment," "discuss[ ] assessment of symptom-related limitations in the explanation for your conclusions" in each of the domains noted above, and "respond[ ] to all allegations of physical limitations or factors which can cause physical limitations." The form, as completed, does *none* of these: aside from two check marks suggesting limitations on Celaya's lifting ability, it includes only eight checkmarks indicating a total lack of disability, without comment, rationale, or evident attention to the medical record. To the extent that the ALJ's judgment rests upon its conclusions, it does not rest upon substantial evidence.

The record gives clear reason for concern that the PRFCA failed to take Plaintiff's obesity into account. In his June 16, 1998 assessment of Celaya's postural limitations, Dr. John Clark indicated that she should never crawl, and only occasionally bend, squat, kneel, and reach above shoulder level. This assessment was made *solely* on the basis of Celaya's obesity, without consideration of her by-then-controlled diabetes and hypertension. The PRFCA, completed when Celaya was apparently at about the same weight, recognizes no limitations whatsoever on her ability to engage in these activities; it also indicates the she could stand and walk for about 6 hours in an eight hour workday; the maximum category listed. The form gives no indication that Dr. Mitts or Dr. Good were aware of Celaya's weight and height.

This report offers no confidence that the ALJ could make his decision on a record that had attempted to assess Plaintiff's ability to withstand the physical demands of a job that required a fair amount of standing, during a year in which she was not only diabetic and substantially obese, but when her hypertension was first out of, and then only marginally under, control. We therefore cannot conclude that the ALJ's decision was based on substantial evidence that took the totality of Celaya's medical condition into account. We vacate the district court's order and instruct the court to remand to the ALJ for a proper step-four analysis based on all of the evidence in the record currently and as it is supplemented.

## CONCLUSION

The ALJ has an affirmative responsibility to develop the record, particularly, as here, where the claimant is unrepresented. In this case, the ALJ failed to consider the obvious factor of claimant's obesity, and relied upon a report that failed to consider that factor in determining claimant's ability to return to a previous job. This does not satisfy the burden of conscientious inquiry as stated in *Higbee*.

**AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED WITH INSTRUCTIONS.**

RAWLINSON, Circuit Judge, dissenting.

I respectfully dissent.

Examination of the phraseology in the majority opinion exposes the tenuous basis upon which the majority gifts the claimant, Carmen Celaya, with a disability she never even claimed.

Our charge is to examine the record of proceedings and determine whether substantial evidence supports the ruling of the Administrative Law Judge (ALJ). *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.2002). The majority opinion strays from that charge.

A careful reading of the majority's opinion reveals its failure to remain faithful to the confines of appellate review. The majority reveals its willingness to disregard the administrative record by stating that the claimant "asserts, at least implicitly, obesity." Majority opinion at 1179. Yet search the record as one might, no assertion of obesity by the claimant, implicit or otherwise, may be found. The majority also states as a fact that "[w]ith a Body Mass Index of at least over 44, [Celaya] well exceeded the criterion level of 40 that would categorize her as 'extremely obese,' the highest category used by the SSA." Majority opinion at 1179. This referenced Body Mass Index is nowhere reflected in the record. Rather than relying on the record in this case, the majority opinion cites to an estimated height for Celaya of 53″ as opposed to a measured height of 57″. Majority opinion at 1179. The majority opinion also notes that Celaya's weight fluctuated between "205 and 213 pounds." *Id.* This notation is an inherent contradiction of the majority's implicit finding that Celaya's judicially diagnosed "obesity" was of the requisite one-year duration to constitute a disability. *See* 20 C.F.R. §§ 404.1505, 416.905 (2001).

The majority opinion acknowledges that Celaya did not meet the listing criterion for obesity. Nevertheless, the majority insists that the ALJ should have conducted a "multiple impairments analysis." Majority opinion at 1183. But what multiple impairments were presented for analysis in this case? Celaya's hypertension and diabetes were admittedly under control. Understandably, an impairment that is un-

der control cannot support a finding of disability. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982) (upholding the ALJ's finding of no disability where the impairments were stabilized).

Not surprisingly, the majority cites no case authority to support its premise that non-disabling impairments plus a non-qualifying disability equal eligibility for benefits. The reason is obvious. No such authority exists. While the ALJ has an obligation to develop the administrative record, he is not required to conjure up a disability where there is none.

In *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir.1996), we reversed a Social Security disability determination for failure of the ALJ to "develop the record fully and fairly." (citations omitted). However, in *Sampson*, there was never a question regarding the nature of the claimant's asserted impairments: multiple sclerosis with impaired vision, chronic lumbar strain and hyperuricemia. *Id.* at 921. There was absolutely no implication in *Sampson* that the ALJ's duty to develop the record extended to undiagnosed or stabilized impairments.

The majority predicates the ALJ's responsibility to develop the record upon the following factoids:

1. Obesity "was raised *implicitly* in Celaya's report of symptoms[;]"

2. "Celaya's obesity was *at least close* to the listing criterion[;]" (emphasis added).

3. "[I]n light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record *should have alerted him* to the need to develop the record in respect to her obesity." (emphasis added).

(Majority opinion at 1182–1183).

The majority would require the ALJ to survey the reported symptoms for "implic-

itly raised" disabilities that are "at least close" to the listing criteria, while remaining alert to the existence of a disability that no medical provider ever detected. This approach would transform Social Security administrative hearings into seance-like proceedings where the ALJ must divine implicit impairments, diagnose disabilities lying close to the listing criterion and detect any aura compelling further development of the record. Nothing in our precedent condones such wholesale disregard of the ALJ's adjudicatory role.

The majority seeks to bolster its criticism of the ALJ's conclusion by describing Celaya as "an illiterate, unrepresented claimant who very likely never knew that she *could* assert obesity as a partial basis for her disability." Majority opinion at 1183 (emphasis in the original). However, that observation is of no assistance to the majority because it raises the distinct probability that Celaya did not assert obesity as a partial basis for her disability because she was never treated for obesity or diagnosed as obese. According to the majority's characterization of Celaya, how else would she have known to assert hypertension and diabetes as disabilities? And why would she assert obesity as a disability if no one ever informed her that she was obese? More importantly, why would the ALJ explore an obesity impairment when Celaya was never treated for obesity, never diagnosed as obese and never asserted obesity as a disability?

The end of the matter is this: the substantial evidence in the record supports the ALJ's finding that Celaya was not disabled. No amount of inferential leaping on the part of the majority can change the state of the evidence presented at the hearing. Examination of that evidence supports the ALJ's ruling, and the ALJ had no obligation to manufacture a disability to bolster Celaya's claim. If there is substantial evidence in the record to support the ALJ's ruling, we must affirm. *See Thomas,* 278 F.3d at 954. And the ALJ had no duty to develop the record in the absence of some basic evidence proffered by the claimant to support her obesity claim. *See Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995) (placing the burden of production on the claimant). I simply cannot agree that the majority's analysis tracks our deferential standard of review. *See Sample,* 694 F.2d at 642(limiting appellate review to determining whether a reasonable mind could accept the ALJ's conclusion). Accordingly, I would AFFIRM the district court's entry of summary judgment in favor of the Commissioner of Social Security.