**Jacqueline STACK, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CV 03–3283–VBK.**

United States District Court, C.D. California. Western Division.

July 27, 2004.

Lawrence D. Rohlfing, Law Offices, Santa Fe Springs, CA, for Plaintiff.

Assistant United States Attorney Julie Zatz, Office of the United States Attorney, Civil Division, Los Angeles, CA, for Defendant.

MEMORANDUM OPINION; ORDER THEREON

KENTON, United States Magistrate Judge.

Plaintiff Jacqueline Stack ("Plaintiff") filed a Complaint on May 14, 2003, seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits under Title II of the Social Security Act ("Act"). Plaintiff

seeks reversal of the Commissioner's decision, or in the alternative, asks the Court to remand the matter for further administrative proceedings.

Plaintiff's application for disability benefits was filed on November 16, 1998 (Administrative Record ["AR"] 94–96), alleging an onset date of August 22, 1996. (AR 102.) She alleged a disabling condition of chronic severe depression and arthritis. (AR 102.) Her application was denied initially (AR 71–73), and she requested reconsideration (AR 74), which was also denied. (AR 74–76.) Plaintiff then requested a hearing before an Administrative Law Judge("ALJ") (AR 86), and filed an Appointment of Representative, designating Dennis H. Devermont, an attorney, as her representative. (AR 34.) The hearing was held in Pasadena, California on March 23, 2000. Plaintiff testified, as did a vocational expert ("VE"), Rheta King. (AR 35–69.) Following the hearing, the ALJ issued a decision on May 22, 2000, finding Plaintiff to be not disabled. (AR 25.)

In this action, Plaintiff filed her Motion for Summary Judgment ("Motion") on December 2, 2003. The Commissioner filed a Cross–Motion for Summary Judgment ("Cross–Motion") on February 6, 2004, and on March 22, 2004, Plaintiff flied her Reply ("Reply"). The parties have consented to proceed before Magistrate Judge Victor B. Kenton, pursuant to 28 U.S.C. § 636(c). The matter is now ready for decision.

### ISSUE RAISED

In her Motion, Plaintiff raises the following issue:

(1) The ALJ failed to properly consider Plaintiff's obesity in the sequential disability analysis (Motion at 4).

### DISCUSSION

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying Plaintiff's disability benefits to determine whether her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998).

A claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 CFR §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a *prima facie* case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively

presumed and benefits are awarded. 20 C.F.R. § 404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Following this sequential evaluation process, the ALJ found that at Step One, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (AR, Finding 1.) At Step Two, Plaintiff was found to have severe impairments consisting of osteoarthritis of the lumbar spine and left knee, combined with a depressive disorder. (*Id.*, Finding 2.) At Step Three, the ALJ found that Plaintiff's medical impairments did not, either individually or in combination, meet or equal any of the listed impairments. (*Id.*, Finding 4.) At Step Four, the ALJ concluded that the Plaintiff could not return to her past relevant work. (*Id.*, Finding 7.) At Step Five, he determined that Plaintiff's impairments did not prevent her from performing a significant number of jobs which exist in the national economy, given her residual functional capacity ("RFC") and vocational profile. (*Id.*, Finding 8.) The ALJ found that Plaintiff was not under a disability under the definition provided in the Act. (*Id.*, Finding 9.)

## THE ALJ FAILED TO GIVE DUE CONSIDERATION TO PLAINTIFF'S OBESITY

Plaintiff's treating physicians at the Nephrology Medical Associates diagnosed her with osteoarthritis of the lumbar spine and left knee. (AR 228–29, 230.) Sue Folk Smith, Ph.D., diagnosed Plaintiff with a depressive disorder. (AR 176.) In addition, there was consistent evidence of obesity. On September 18, 1998, Plaintiff's treating physician, George E. Fischmann, M.D. FACP, recommended a weight loss plan based on his conclusion that Plaintiff had "an obviously deteriorating course with increasing weight that is exacerbating her cholesterol and arthritis." (AR 229.) Dr. Fischmann noted that Plaintiff had gained 20 pounds since her last visit and had reached a weight of 203 pounds. (AR 228.) On November 12, 1998, treating physician, Russell J. Vergess, M.D., also recommended a weight loss program. (AR 230.) On January 17, 2000, examining physician Jeremy Schweiger, M.D., diagnosed Plaintiff with obesity, recording her weight at 207 pounds on a five foot five frame. (AR 486–87.) [1]

Based on this record, the ALJ found that Plaintiff suffered from severe impairments consisting of osteoarthritis of the lumbar spine and left knee. (AR 24.) The ALJ also found that Plaintiff had a depressive order but concluded that alcohol abuse was a material contributing factor to her mental symptoms. (AR 23.) The ALJ concluded at Step Three that Plaintiff's impairments did not meet, nor were they medically equivalent to, a listed impairment. (AR 24.)

Plaintiff argues that the ALJ failed to acknowledge her obesity or the effect of her obesity on the sequential disability

---

**1.** Indeed, in this litigation, the Commissioner concedes that Plaintiff is obese. (*See* Cross- Motion at 3, *et seq.*)

analysis. (Motion at 4.) The Commissioner argues the ALJ properly assessed all of the evidence, including the significance of Plaintiff's obesity, and properly concluded that Plaintiff's impairments were not sufficient to form a presumption of disability. (Motion at 4.)

■ "In determining whether an individual's impairments are of sufficient medical severity that such ... could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir.2003), quoting 42 U.S.C. § 423(d)(2)(B). At Step Three of the sequential analysis, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Celaya*, 332 F.3d at 1182, quoting *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990). When there is evidence of obesity, the ALJ must determine the effect of the claimant's obesity upon her other impairments, her ability to work, and her general health. *Celaya*, 332 F.3d at 1182.

In *Celaya*, the *pro se* claimant was diagnosed with diabetes and hypertension. She also was categorized as extremely obese, in that her Body Mass Index ("BMI") exceeded the criterion level of 40.[2] The Ninth Circuit held that although the claimant had not explicitly raised her obesity as a disabling factor, it nevertheless should have been included in the multiple impairment analysis because it was implicitly raised in her report of symptoms and it was clear from the record. The *Celaya*

court noted the ALJ has a special duty to develop the record and assure claimant's interests are considered. *Id.* at 1183. The court reasoned that fulfillment of that duty requires an assessment of the claimant's obesity even though not expressly raised by the claimant herself. *Id.*

■ The ALJ breached his duty to develop the record and assure Plaintiff's interests were considered by failing to acknowledge Plaintiff's obesity and to weigh its interactive effect on her other existing impairments. Although there was no mention of Plaintiff's obesity during the administrative hearing, consistent evidence of obesity is present throughout the record. *See Celaya*, 332 F.3d at 1182; *see also Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir.2000) ("While [the claimant] did not claim obesity as an impairment when filing her Disability Report, the evidence should have alerted the ALJ that [she] had another relevant impairment that could contribute to the cumulative effect of her other impairments."). As noted above, Plaintiff's treating physician diagnosed her as being obese, her weight fluctuated between 200 and 229 pounds, and her increasing weight and recommended weight loss plan were recorded numerous times. (*See* AR 231, 238, 261, 279, 416, 487.) While Plaintiff here was represented at the administrative hearing, the *Celaya* court expressly stated that the ALJ's duty to develop the record with respect to obesity applies "even when the claimant is represented by counsel." *Celaya*, 332 at 1183, quoting *Brown v. Heckler* 713 F.2d 441, 443 (9th Cir.1983) (citations omitted).

**2.** The plaintiff in *Celaya* applied for benefits in August 1996 when there was still a Listing criterion for obesity (Listing 9.09 [20 C.F.R. Part 404, Appendix 1 to subpart P, Listing of Impairments, 61 Fed.Reg. 28.046–47 (1997)].) Obesity was subsequently removed

from the Listing of Impairments, however, and was not an applicable impairment of Listing level severity at the time Plaintiff's case was adjudicated in the district court. *See Celaya*, 332 F.3d at 1181, n. 1.

The Commissioner argues that *Celaya* is inapplicable to Plaintiff's case because the ALJ acknowledged Plaintiff's obesity and accepted functional capacity assessments from medical sources who also had considered her obesity. (Cross–Motion at 3.) In support of this argument, the Commissioner cites to page 19 of the Administrative Record wherein the ALJ states that "Doctors ... recommended a weight loss program." (AR 19.) Because the ALJ is required to adequately explain his evaluation and the combined effect of a claimant's impairments, *see Marcia*, 900 F.2d at 176, the Court finds that the ALJ's passing reference to a recommended weight loss program falls far short of acknowledging a diagnosis of obesity and weighing the effect of that obesity on Plaintiff's severe impairments (osteoarthritis and depressive disorder). *See Barrett v. Barnhart*, 355 F.3d 1065, 1068–69 (7th Cir.2004) (relying on *Celaya* and noting that "[e]ven if [the claimant's] arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both").

The Commissioner also contends that any failure to properly assess Plaintiff's obesity in conjunction with her other impairments was Plaintiff's fault because she failed to sustain her burden of proving that she was more physically limited by her obesity. (Opposition at 3–4.) This argument is defeated by *Celaya*; it was the ALJ's burden to develop the record and assess her multiple impairments once he was put on notice of Plaintiff's obesity. *See Celaya*, 332 F.3d at 1182–83 ("The ALJ was responsible for determining the effect of Celaya's obesity upon her other impairments.") Even assuming *arguendo* Plaintiff had such a burden, the record shows that she did present evidence that her treating physician had concluded her arthritis worsened with her increased weight. (*See* AR 229 ("This is a patient with an obviously deteriorating course with increasing weight that is exacerbating her cholesterol and arthritis.").)

The ALJ had a duty to assess the impact of Plaintiff's undisputed obesity on the various steps of the sequential evaluation process. Because this did not occur, the ALJ committed legal error in assessing Plaintiff's disability claim. *See Celaya*, 332 F.3d at 1181–83. Accordingly, the Court reverses the ALJ's decision and remands Plaintiff's claim for reconsideration and a new hearing consistent with this opinion and the Ninth Circuit's decision in *Celaya*. On remand, the ALJ shall consider and discuss in the Step Three analysis, the effect of Plaintiff's obesity as a medically determinable impairment and its effect on Plaintiff's other impairments.[3] The ALJ also shall consider and discuss how Plaintiff's obesity factors into her residual functional capacity.

### ORDER

**IT IS THEREFORE ORDERED** that (1) Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part; (2) the Commissioner's Cross–

---

**3.** On remand, the ALJ also should reconsider the propriety of his decision to disregard Plaintiff's depressive disorder based on her alcoholism. Although not raised on this appeal, the issue of whether the ALJ can consider alcoholism as a contributing factor to each impairment is questionable. *See Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001) ("The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of Bustamante's alcoholism on his other mental impairments. If, and only if, the ALJ found that Bustamante was disabled under the five-step inquiry, should the ALJ have evaluated whether Bustamante would still be disabled if he stopped using alcohol.")

Motion for Summary Judgment is **DE-NIED**; and (3) the matter is remanded for further proceedings consistent with this Memorandum Opinion.