**Herman BLACK, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**Case No. CV 02–09383 (RZ).**

United States District Court, C.D. California.

Feb. 5, 2008.

Order Denying Reconsideration Feb. 13, 2008.

low.").

Stephen G. Rosales, Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, CA, for Plaintiff.

Sharla Cerra, AUSA, Office of the United States Attorney, Los Angeles, CA, for Defendant.

## ORDER ON APPLICATION FOR ATTORNEY'S FEES UNDER 42 U.S.C. § 406(b)

RALPH ZAREFSKY, United States Magistrate Judge.

This matter comes before the Court on the application of Steven G. Rosales, counsel for Plaintiff, for an award of attorney's fees pursuant to 42 U.S.C. § 406(b). The Court previously awarded Mr. Rosales the sum of $9,750, with a corollary requirement under the applicable statute that Mr. Rosales reimburse Plaintiff the sum of $2,900 which had been awarded under the Equal Access to Justice Act, 28 U.S.C. § 2412. Mr. Rosales appealed, and the Court of Appeals for the Ninth Circuit reversed. *Black v. Astrue*, 229 Fed.Appx. 515 (9th Cir.2007). The Court of Appeals interpreted this Court's statement that the fee sought would give Mr. Rosales an effective hourly rate "that would be the envy of practitioners in almost any field" as indicating that the Court placed an overwhelming focus on the effective hourly rate, and did not fully incorporate the framework of *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). The Court of Appeals remanded with directions that the Court "should reconsider the reasonableness of the fees sought, in light of the contingency fee agreement and the factors bearing upon reasonableness but without primary focus on a lodestar calculation of fees." 229 Fed.Appx. at 517.

Following remand, the Court gave both Plaintiff's counsel and the Commissioner the opportunity to submit any additional information they desired. Plaintiff's counsel submitted a new "Memorandum in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. § 406(b); and Declaration of Steven G. Rosales." The Commissioner did not respond.

The Court undertakes the review ordered by the Court of Appeals. The Court has read and re-read *Gisbrecht*, parsed it, scrutinized it, and tried to apply it as best it understands that decision. As Justice Scalia noted in dissent in *Gisbrecht*, the majority opinion gives little guidance to district courts. 535 U.S. at 809, 122 S.Ct.

1817. This Court has found no appellate authority adding any guidance to the *Gisbrecht* analysis, although many judicial officers have stated that they would welcome such explication. *See, e.g., Ellick v. Barnhart,* 445 F.Supp.2d 1166, 1174 n. 21 (C.D.Cal.2006) ("Ironically, further guidance from the appellate courts may be unlikely, given the deference accorded to district courts in this context.") *See Gisbrecht* at 808, 122 S.Ct. 1817 ("Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review"). Speaking for itself, this Court gladly would exchange some of its: respect for a little more guidance.

Plaintiff filed his Complaint on December 27, 2002, seeking review of the Commissioner's decision denying him disability benefits. After the Commissioner answered, denying the essential allegations of the Complaint and filed the administrative record in accordance with 42 U.S.C. § 405(g), Plaintiff submitted a memorandum in support of his Complaint. In that 12–page memorandum, augmented by three exhibits consisting of copies of two internal Social Security program and policy documents, and one unpublished case, Plaintiff made two arguments. First, Plaintiff asserted that the Commissioner did not properly consider his obesity when conducting the sequential disability analysis. In this section of the memorandum, Plaintiff argued that he fell within one of the "listings" in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I; under Step 3 of the sequential analysis, a party who falls under one of the Listings is deemed to be disabled without consideration of the factors at Step 4 or Step 5. *Lester v. Chater,* 81 F.3d 821, 828 (9th Cir.1996). Plaintiff then spent a portion of his memorandum countering an argument that he thought the Commissioner might make when it came time for the Commissioner to brief the matter—that, although the applicable listing since had been deleted, the deletion could not be made retroactive. Finally, Plaintiff referenced a then-recent Ninth Circuit case, *Celaya v. Halter,* 332 F.3d 1177 (9th Cir. 2003), which, he asserted, required the Commissioner to consider the exacerbating effect of his obesity.

In his second argument, Plaintiff asserted that he suffered from non-exertional limitations, which precluded the application of the Medical–Vocational guidelines, 20 C.F.R. Part 404, Subpart P, Appendix II, the so-called "grids" which Social Security Administrative Law Judges sometimes use to determine if a claimant is disabled. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). In this section of the memorandum, Plaintiff argued that he had various mental impairments and non-exertional physical impairments which the Administrative Law Judge did not consider. Under settled and familiar law, the grids do not apply when a claimant has non-exertional limitations which affect his ability to work. *Aukland v. Massanari,* 257 F.3d 1033, 1034 (9th Cir.2001).

Defendant did not file an opposing memorandum. Instead, prior to the time such a memorandum was due, the parties stipulated that the matter should be remanded to the Commissioner. The stipulation provided:

IT IS HEREBY STIPULATED, by and between the parties, through their respective counsel, that this action be remanded to the Commissioner of Social Security for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Upon remand, The ALJ will be instructed to further evaluate plaintiff's obesity throughout the sequential disability analysis. The ALJ will give fur-

ther consideration to plaintiff's maximum residual functional capacity and provide appropriate rationale with specific reference to the evidence of record in support of the assessed limitations, and will take supplemental vocational expert testimony.

Stipulation for Remand, filed August 12, 2003. The Court entered Judgment upon the stipulation, remanding the matter to the Commissioner "for the reasons set forth in the parties' Stipulation." Judgment of Remand, filed August 12, 2003.

Section 406(b) authorizes the Court to render, as part of its judgment, "a reasonable fee ... not in excess of 25 percent of the ... past-due benefits," which is payable out of those benefits. In *Gisbrecht,* the Supreme Court, concluding that only contingency arrangements were authorized under the statute, "h[eld] that § 406(b) does not displace contingent-fee agreements with the statutory ceiling; instead, § 406(b) instructs courts to review for reasonableness fees yielded by those agreements." 535 U.S. at 808–09, 122 S.Ct. 1817. The agreement Plaintiff signed provided, as pertinent here, as follows:

1. Claimant employs Attorney to represent Claimant as his Attorney at law in a Social Security claim regarding DIB and empowers Attorney to take such action as may be advisable in the judgment of Attorney, including the taking of judicial review.

2. In consideration of the services to be performed by the Attorney and it being the desire of the Claimant to compensate Attorney out of the proceeds shall [sic] receive **25% of the backpay** [sic] awarded by the Social Security Administration to the claimant or **such amount as the Commissioner may designate under 42 U.S.C § 406(a)(2)(A) which is currently $5,300.00,** whichever is **smaller,** upon successful completion of

the case **at or before a first hearing decision from an ALJ.** If the Claimant and the Attorney are unsuccessful in obtaining a recovery, Attorney will receive no fee. All fees are subject to approval or review by the Social Security Administration. This paragraph submits this matter for expedited fee approval subject to ¶ 3.

3. The provisions of ¶ 2 only apply to dispositions at or before a first hearing decision from an ALJ. The fee for successful prosecution of this matter is 25% **of the backpay [sic] awarded upon reversal of any unfavorable ALJ decision for work before the Social Security Administration.** Attorney shall petition for authorization to charge this fee in compliance with the Social Security Act for all time whether exclusively or not committed to such representation.

4. If this matter requires judicial review of any adverse decision of the Social Security Administration, [t]he fee for successful prosecution of this matter is **a separate 25% of the backpay** [sic] **awarded upon reversal of any unfavorable ALJ decision for work before the court.** Attorney shall seek compensation under the Equal Access to Justice Act and such amount shall credit to the client for fees otherwise payable for that particular work. Client shall endorse such documents as are needed to pay Attorney any amounts under the EAJA.

. . .

8. This Agreement comprises the entire contract between Attorney and Claimant. The laws of the State of California shall govern the construction and interpretation of this Agreement except that federal law governs the expedited fee process.

. . .

Rosales Declaration, Exhibit 1 (bold text in original).[1]

1. Counsel states in his declaration that the Agreement with the Plaintiff is dated October

California law provides that an agreement is to be read as a whole, and that the different provisions are to be read to give effect to the whole. CAL. CIVIL CODE § 1641. Ambiguity is to be construed against the drafter, CAL. CIVIL CODE § 1654; since this agreement is a form with blanks filled in, the Court is confident it was drafted by counsel for Plaintiff who, as counsel has acknowledged, works for a law firm which represents plaintiffs in a plurality of the Social Security cases filed in the Central District of California. The Court notes that, for the last several years, approximately one thousand Social Security disability review cases have been filed each year in the Central District of California.

*Gisbrecht* directed courts, in making their "independent check," 535 U.S. at 807, 122 S.Ct. 1817, of the reasonableness of the fee, "to review for reasonableness fees *yielded by those agreements.*" 535 U.S. at 809, 122 S.Ct. 1817 (emphasis added). *Gisbrecht* also stated that "the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." 535 U.S. at 807, 122 S.Ct. 1817. The entire focus of *Gisbrecht* is on the fee yielded by the contingency amount stated in the contract. Stated more colloquially, *Gisbrecht* directs courts to ask "Has the claimant shown that the fee yielded by that percentage is reasonable in the particular case?" The reason that the focus is on *the contract* is that the question for decision in *Gisbrecht* was whether a court considering a § 406(b) fee application should *start* with the lodestar, or instead should start with the contract. 535 U.S. at 792, 122 S.Ct. 1817. The Supreme Court held that a court should start with the contract, and see if the claimant had carried his "burden of persuasion," 535

U.S. at 807 and n. 17, 122 S.Ct. 1817, that the amount yielded by the contract was reasonable.

In this case, however—and in virtually every case which this Court has seen—Plaintiff's counsel does *not* start with the contract. Plaintiff's counsel has made no attempt to carry his burden of persuasion that the amount yielded by the contract percentage when applied to the past due benefits is a reasonable amount. Plaintiff's counsel does not seek the amount yielded by the contract. When counsel does not seek the amount yielded by the contract, it is not entirely clear to the Court what is the impact of the fact that Plaintiff *has* a contract with a 25% contingency. It is not logical to draw an inference that, because Plaintiff seeks less than the amount yielded by the contract, that the amount which Plaintiff *does* seek is reasonable. That assumes that Plaintiff would in fact be entitled to the amount yielded by the contract, and has taken a discount. But Plaintiff would be entitled to the amount yielded by the contract only if the amount yielded by the contract itself would be reasonable—the starting point which Plaintiff has not proven, or attempted to prove. One might just as well—perhaps even more so—draw the contrary inference, that the seeking of fees in an amount less than that which the contingency agreement would yield is a recognition that the amount the agreement would yield cannot be defended as reasonable.

Even though the applicant has not asserted that he is entitled to the fee yielded by the contract, the Court does start with the contract. (The Court assumes that the reference to "backpay" in the contract is simply the use of inartful terminology, and that the correct term is "past due bene-

27, 2004. Rosales Declaration ¶ 2. In fact, the Agreement is dated November 19, 2002.

Rosales Declaration, Exhibit 1.

fits.") The Court notes that, under the contract, counsel could receive as much as one-half of past due benefits, as follows. Paragraph 2 of the contract provides for counsel to receive a fee in accordance with 42 U.S.C. § 406(a)(2)(A) if the case is successfully completed at or before a first hearing before the Administrative Law Judge, such amount presently limited to $5,300. If, as here, the case was not successfully completed at or before such a first hearing, then, according to Paragraph 3, Paragraph 2 does not apply. Instead, Paragraph 3 provides on its face that counsel is entitled to recover 25% of past due benefits upon reversal of a decision by the Administrative Law Judge; this provision does not contain the limitation expressed in Paragraph 2. If the Court were to stop reading there, it would be possible to conclude that Paragraph 2 applies to work before the agency, and Paragraph 3 applies to work before the Court. But Paragraph 4 dispels that notion, because it provides that counsel is entitled to a "separate" fee of 25% of past due benefits for court work after reversal of a decision by the Administrative Law Judge. Thus, what Plaintiff and counsel agreed to, in the totality of Paragraphs 3 and 4, was that counsel could receive two separate awards of 25% of past due benefits, both awards, of course, subject to determination by the appropriate reviewer.[2]

Starting with the *contract*, therefore, as *Gisbrecht* instructs, potentially would yield a fee of one-half of past due benefits, a fee that, at least on its face, seems unreasonable. But, as noted, counsel did not start with the contract and try and persuade the Court that the amount yielded by the contract was reasonable. Rather, counsel argues that a different amount is reasonable. Thus, the Court must assess whether that

is so, but cannot do so on the basis that it is an amount yielded by the contract, as *Gisbrecht* considered.

The Court notes several things about the character of the representation here. First, the parties *stipulated* to remand, and did so before the Commissioner filed his brief. Plaintiff's counsel therefore did not have to evaluate the Commissioner's brief or prepare a reply. Second, the stipulation did not concede the argument which Plaintiff's counsel asserted at length in the brief—that Plaintiff fell within one of the Listings, and therefore conclusively was determined to be disabled. Rather, the stipulation provided that the Administrative Law Judge, on remand, should consider obesity at *each* stage of the sequential evaluation. Third, there is no indication that it was Plaintiff's brief that caused the Commissioner to stipulate to a remand. The fact that the Ninth Circuit had decided the *Celaya* case on June 17, 2003 may well have been the primary motivating factor in causing the Commissioner to enter such a stipulation, which was submitted to the Court on August 8, 2003.

Beyond these matters is a more fundamental consideration, that of causation. Section 406(b) provides:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

The fee to be awarded (and the statute says that the Court "may" award such a fee, not that it "must" award such a fee) is

---

**2.** Counsel advises that the Social Security Administration awarded a fee of $6,300 for the administrative work. Counsel's Memorandum at 3 n.2. This represents about one-fourth of the 25% which the contract would have yielded under ¶ 3.

a fee for representation before the Court, and that representation must have produced a judgment favorable to the claimant. In this case, the "favorable" judgment was a judgment for remand; there was nothing in the judgment about an award of benefits. The award of benefits came about after remand, when the Administrative Law Judge reconsidered the matter and issued a decision awarding benefits.

When the Court, as part of its decision, directs the awarding of benefits, there is a much stronger causal link between the lawyering in court—the representation referred to in § 406(b)—and the favorable outcome for the Plaintiff, than when the Court remands the matter to the Commissioner for further proceedings. When the Court directs the awarding of benefits, it can be said fairly confidently that it was the in-court lawyering, as opposed to the lawyering before the agency, which brought about the award. These are, in the language of the statute, the "past-due benefits to which the claimant is entitled by reason of such judgment." That is not so true when the Court remands for further proceedings. The difference is akin to the distinction which tort law draws between "but-for" causation and proximate cause. It is true that, without the Court's

remand, Plaintiff could not have secured a favorable result. The Court's remand, however, only gave Plaintiff a *chance* to obtain benefits; it was what happened upon the return to the administrative level, after remand, which determined whether Plaintiff in fact would obtain benefits.[3]

This fact revealed itself in this case. On remand, the Administrative Law Judge prepared an extensive decision. In that decision, however, he did not rely on the argument, made in Plaintiff's memorandum to this Court, that Plaintiff fell within a listing and therefore was disabled; while he discussed that issue, he noted that the Commissioner does not accept the precedent of court cases that agreed with the argument, which Plaintiff had made in his Court papers, that the deletion of the listing could not apply retroactively. Feeling bound by the Commissioner's rules, and not acting under a mandate from the Court in this particular case directing him to apply the since-deleted listing, the Administrative Law Judge then proceeded instead to assess the effect of Plaintiff's obesity throughout the sequential analysis, and concluded that Plaintiff met the definition of disability. It was the work at the administrative level, not the work in court,

**3.** The statute says that the Court may allow attorney's fees "as part of its judgment," which could be interpreted to mean that, if the Court does not award fees at the time it issues judgment, it may not do so later. While this interpretation is consistent with the causation discussion—if the Court awards benefits, it is the representation in the Court which produced the benefits, not the later representation after remand—the statute also could be read to eliminate the Court's ability to award attorney's fees at all, either because it lost jurisdiction to do so after the judgment was entered, or because the statute means that the "but-for" determination is not to be considered, but only the "proximate" cause factor of the lawyering after remand; EAJA fees, on the other hand, *can* be awarded for judgments of remand, and must be sought within thirty days after the period for appeal has run. *Hoa Hong v. Barnhart*, 483 F.3d 600, 608–09 (9th Cir.2007). Although the Court knows of no Ninth Circuit authority addressing the jurisdictional issue, the Seventh Circuit *has* ruled that the provision is not jurisdictional, and the Court can award fees post-judgment. *Smith v. Bowen*, 815 F.2d 1152 (7th Cir.1987). Given that Congress was trying to maintain a corps of Social Security practitioners, the Court further does not believe it likely that the statutory language was meant to preclude practitioners from recovering § 406(b) fees for their "but-for" successes. *See McGraw v. Barnhart*, 450 F.3d 493, 503–04 (10th Cir.2006).

which, in a "proximate cause" sense, allowed Plaintiff to receive his benefits.

In addition, of course, in this case the Court did not even adjudicate the matter and reach a conclusion that the Commissioner had erred; the Court simply accepted the parties' stipulation that the matter should be remanded. Thus, the Court made no evaluation of the worth of Plaintiff's arguments. The Court does note that the issues presented were not complex.

*Gisbrecht* also says that in conducting its "independent check" of whether the fee yielded by the contract contingency figure is reasonable, the Court can require counsel to provide documentation of the hours spent, together with an indication of counsel's usual hourly rate for non-contingent cases. 535 U.S. at 808, 122 S.Ct. 1817. The Court can understand no reason for looking at hours and rates if not to compare them to a lodestar—the product of a reasonable rate multiplied by a reasonable number of hours—because *Gisbrecht* says that the purpose of seeing the hours and rates is to compare the fee yielded by the contract to the benefits to see if a downward adjustment is warranted. *Id.* Although, as noted, the fees yielded by the contract contingency figure are not what Plaintiff's counsel seeks here, the Court assumes that it nevertheless should look at the benefits awarded in comparison to the fees and rates to determine if the fee sought is reasonable. Although the Court did not require Plaintiff's counsel to submit such data, counsel did so, and thus the Court evaluates it, not as a primary factor, but as one factor in determining whether the amount sought is reasonable.

Counsel states that he spent 17.7 hours and that his legal assistant spent 3.6 hours in representing Plaintiff before the Court. Rosales Declaration ¶ 5. Based on its familiarity with Social Security cases, the Court believes that the hours expended were reasonable. Counsel also states that neither he nor any member of his firm maintains an hourly rate. *Id.* ¶ 6. As a substitute, counsel attaches portions of surveys of small law firms, argues that, if he had an hourly rate, he should fit within the upper tenth of those attorneys charging hourly rates, and that those rates then should be indexed for inflation. *Id.* ¶ 7–10.[4]

The Court does not find the survey data helpful. To begin with, it is not obvious to the Court why a survey of small law firms is relevant to the question of what rates this particular law firm might charge. Some small firms charge high rates; some charge lower rates. Far more relevant is the type of work done, for comparable work, rather than the size of the firm in which the attorney works, is more likely to be representative of what rate an attorney might charge if he were to charge one. The survey, however, does not contain such data, as for example, of the rates typically charged by attorneys working in the Worker's Compensation area, where issues of disability also arise. Counsel does state in his declaration that attorneys in his firm have received fee awards in ERISA cases of up to $300 per hour. Rosales Declaration ¶ 19. An ERISA case can have some issues in common with Social Security issues, if the ERISA case concerns disability.

---

4. The Rosales Declaration is a curious document, in that it does not simply contain factual statements, but also arguments of counsel and even citation of cases to support those arguments. Arguments do not gain greater force by being sworn to. They have no place in an affidavit or declaration, and they cheapen the value of such a document as a mode of evidence.

The Court also finds the survey data of questionable reliability. The 2000 survey, for example, indicates that the average gross receipts per lawyer in California was $271,590, but that the average hourly rate for partners was $250 and for associates was $171. Thus, an average partner would be billing only 1,086 hours per year ($271,-590 divided by $250) and an average associate would be billing only 1,588 hours per year ($271,590 divided by $171). In the world of private practice, even private practice in the year 2000, the Court does not find that believable. With data this uncertain, the Court does not find the survey a useful basis for determining a hypothetical rate where Plaintiffs counsel states that he has no regular rate.

Plaintiff seeks an award that would equate to an hourly rate of $875.03 per hour for attorneys and $420 per hour for paralegal assistants. As part of its independent check on reasonableness, even without considering the lodestar analysis as a primary factor, the Court finds this means a fee that is troubling when compared to the benefits awarded. *Gisbrecht,* 535 U.S. at 808, 122 S.Ct. 1817.

Plaintiff makes an implicit argument that there can be more than one reasonable fee, and that the Court need only find that the fee sought is "a" reasonable fee, not "the" reasonable fee. Counsel's Memorandum at 11:9–11. Counsel in *Gisbrecht* also made this argument in his brief to the Supreme Court. *See Gisbrecht,* Brief of Petitioner, 2002 WL 100406 at 20. Perhaps that argument makes sense if the fee being assessed is, in fact, the fee yielded by applying the contingency percentage in the contract. But the Court does not agree with the argument if the fee being assessed is a fee that counsel requests, but is not one yielded by applying the contingency percentage to the past due benefits. Such a fee cannot be "a" reasonable fee simply because counsel *asks* for it; if that were so, then there would be no reason or basis for the Court to make its own independent check of the fee's reasonableness.

Given all the factors here, the Court does not find that the requested fee of $17,000 is reasonable for the work performed in Court. Taking into account the fact that the Court did not adjudicate the matter, but signed a stipulation for remand; that there is no indication that the Court work persuaded the Commissioner to stipulate; that the actual awarding of benefits came from the administrative decision, not the Court's decision; that there is no evidence that the fee yielded by the contract itself would be reasonable; that there is no sound evidence that the rate counsel seeks is reasonable; but that, by taking a contingency, Plaintiff's counsel ran some risk,[5] Plaintiff did ultimately prevail, and that Plaintiff's counsel could not receive payment at all unless the contingency of ultimately prevailing before the agency materialized, the Court finds that the reasonable value of the services performed in Court is the previously-awarded amount of $9,750. Counsel advises that the Commissioner has paid out this sum already.

Plaintiff's motion therefore is granted to the extent of the previously-awarded $9,750. Otherwise, the motion is Denied.

IT IS SO ORDERED.

---

5. The risk, however, was not the same kind of risk that counsel in other fields might face. Plaintiff's counsel indicates that the average Social Security case in court consumes only 33.75 hours. Counsel's Memorandum at 23:21–24:1, *citing Patterson v. Apfel,* 99 F.Supp.2d 1212, 1214 n. 2 (C.D.Cal.2000). An attorney taking a tort case or employment case on contingency, for example, would be likely to expend several hundred hours, and therefore take a far greater risk.

ORDER DENYING PLAINTIFF'S COUNSEL'S "MOTION FOR RECONSIDERATION AND NEW TRIAL UNDER F.R.CIV.P. 59"

This matter comes before the Court on the motion of applicant Stephen Rosales, counsel for Plaintiff. The applicant makes this motion under FED. R. CIV. P. 59(e), complaining of this Court's order of February 5, 2008 in which the Court awarded fees pursuant to 42 U.S.C. § 406(b). The applicant asks this Court to award a higher amount of fees than the Court did. The Court finds that oral argument will not advance the decision on the present motion. The hearing set for March 24, 2008 is vacated. FED. R. CIV.P. 78; L.R. 7–15.

"A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). [citations omitted] There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is 'necessary to correct *manifest errors of law or fact upon which the judgment is based;*' (2) the moving party presents 'newly discovered or previously unavailable evidence;' (3) the motion is necessary to 'prevent manifest injustice;' or (4) there is an 'intervening change in controlling law.'" *Turner v. Burlington Northern Santa Fe Railroad Co.*, 338 F.3d 1058, 1063 (9th Cir.2003), quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995) (italics in original). *See also Salerno v. Astrue*, 266 Fed.Appx. 570 (9th Cir.2008). The applicant has not satisfied this standard.

Even though the applicant states in his motion that there has been an error of law, he identifies no such error; rather he merely disputes this Court's determination on the § 406(b) motion. He presents a variety of policy arguments in support of his position on attorney's fees, but he does not analyze or grapple with the language of the statute itself. He complains that the Court noted that it had remanded the matter and had not itself awarded benefits. But, contrary to the implication of the applicant's argument, the Court did not hold that fees could not be awarded at all—just the contrary. Rather, the Court ruled that it must assess the reasonableness of the fees for the work done in Court, which is what the statute covers; in doing so, the fact that the Court did not rule that Plaintiff was entitled to benefits, but instead was entitled to a remand so that the Commissioner could decide if Plaintiff was entitled to benefits, was one factor among several which should be considered.

Nor has the applicant demonstrated any way in which the Court's reading of *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002), is incorrect, let alone *manifestly* so. Counsel states in his opening shot that "this is satellite litigation," and thereby seeks to invoke *Gisbrecht*'s caution against satellite litigation over rates and hours. The applicant's characterization is hyperbole. There has been a motion and a ruling, and nothing else. The Court's ruling applied *Gisbrecht* according to its holding and its teachings, as best as they could be determined. Counsel argues that he has exercised "professional judgment" in requesting the fee that he did, rather than the amount yielded by the contingency percentage in the contract, but that is just the point. Counsel's professional judgment is that he should *not* seek the contract amount. Either that is a judgment that the contract amount would not be reasonable, or that counsel for charitable reasons chose not to seek it. But for whatever reason, counsel does not seek what the contract calls for, and the entire focus of *Gisbrecht* is on what the contract calls for. Moreover, counsel is making *his* judgment as to what the appropriate fee is, but the statute requires the *Court* to make a determination.

Counsel appears to suggest that the Court should simply adopt his request, as long as other courts have done the same thing. That method would read out of both the statute and *Gisbrecht* the Court's obligation to determine a reasonable fee.

Counsel identifies no new evidence or newly available evidence. He does submit a declaration from his colleague, which discusses his colleague's decision to focus on Social Security disability cases and other matters, and which contains arguments in the declaration itself, but there is no new evidence, or evidence which was not available earlier, and the declaration provides no basis for altering the decision pursuant to Rule 59(e).

Counsel identifies no manifest injustice, but simply prefers a different outcome.[1]

Finally, there has been no intervening change in the law.

The Court acknowledges, as it did in its initial ruling, that this area of the law is far from clear. However, the applicant's severe, even strident, disagreement with the Court's decision does not offer a basis for the Court to change that decision.

The applicant's motion is denied.

IT IS SO ORDERED.

---

1. At one point counsel states "Now, counsel has waited until 2008 to get paid at all for the Court fees absent the partial payment under the EAJA." Counsel's Memorandum of Points and Authorities, filed February 11, 2008, at 9:19–20. In the underlying motion itself, however, counsel represented that he had received the § 406(b) fees which the Court awarded in 2005 shortly after the Court awarded them. Counsel's Memorandum in Support of Motion for Attorney Fees Pursuant to 42 U.S.C. § 406(b), filed October 19, 2007, at 2 n. 1. The only fees that counsel has not received are fees that the Court has not found should be awarded. This fact does not qualify as "manifest injustice."